## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TERRY LEE EVANSON, | ) | Case No. 13-19032 MER |
| LYNETTE PEARCE EVANSON, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| ——————————————— | ) | |
| | ) | |
| COMMAND CENTER, INC., | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY LEE EVANSON, and | ) | |
| LYNETTE PEARCE EVANSON, | ) | |
| Respondents. | ) | |

## MOTION FOR RELIEF FROM STAY

COMMAND CENTER, INC. ("Command Center"), through its undersigned counsel, respectfully moves this Court for an Order Granting Command Center Relief from the Automatic Stay to proceed with a state court action to liquidate the claims by Command Center against Mr. Terry Lee Evanson and Ms. Lynette Pearce Evanson, pursuant to 11 U.S.C. §362(d)(1), and states as follows:

1.    Terry Lee Evanson and Lynette Pearce Evanson (collectively the "Debtors"), voluntarily filed for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on May 28, 2013 ("Petition Date").

2.    In the Debtors' Statement of Financial Affairs filed in connection with their bankruptcy case, the Debtors listed litigation involving AdvantEdge Insurance Group, LLC and Command Center pending in the District Court, City and County of Denver, Colorado (the "State Court"), Case No. 2010CV4135, styled *AdvantEdge Insurance Group, LLC, v. Command Center, Inc., et al.* (the "Civil Action"). *See Docket No. 21, p. 2.* The Debtors also schedule the debts owed to Command Center as contingent, unliquidated and disputed in the amount of $1,500,000. *Id.*, p. 22.

3.    Pre-petition, Command Center, Mr. Evanson, Ms. Evanson and AdvantEdge Insurance Group, LLC, among others were involved in the Civil Action. The Civil Action stems out of the Debtors' (among others) alleged civil theft of the monies and

-1-

property of Command Center through a several year scheme of overcharging Command Center on the premiums for insurance policies brokered through Mr. Evanson, Keith Anderson and their affiliates. A copy of AdvantEdge Insurance's Group, LLC's Complaint is attached hereto as Exhibit 1. A copy of Command Center's initial Answer to the Complaint and Jury Demand is attached as Exhibit 2. A copy of Command Center's Third Amended Answer and Counterclaims is attached hereto as Exhibit 3. A copy of Mr. Evanson's Answer to the Counterclaims is attached hereto as Exhibit 4. A copy of Ms. Evanson's Answer to the Counterclaims is attached hereto as Exhibit 5.

4.     Mr. Anderson and Moreton Insurance of Colorado, LLC, among others, have also filed their Answers to Command Center's claims in the Civil Action. Such documents are available upon request to Command Center's counsel.

5.     Command Center learned of the scheme to convert its funds after many bank statements, emails, and other information identified the overcharging for premiums. These documents were produced in discovery in the Civil Action. Command Center also learned that the excess premiums were diverted by Mr. Evanson, Mr. Anderson and others to their affiliates. AdvantEdge Insurance Group, LLC is owned by Ms. Evanson. However, Command Center learned that AdvantEdge Insurance Group, LLC operated as an unlicensed insurance agency in Colorado, it did not maintain corporate records or hold corporate meetings, it did not have any employees, it did not have any assets, and was set up for the sole purpose of funneling monies to Mr. Anderson and/or Mr. Evanson, among others.

6.     Based upon its investigation to date, Command Center has suffered damages in excess of $832,063.24, not including attorney's fees and costs or treble damages. The Debtors allegedly received the benefit of over $59,081.00 of Command Center's over payment of premiums to AdvantEdge Insurance Group, LLC.

7.     The Civil Action is set for trial on March 31, 2014. The parties to the Civil Action have engaged in extensive discovery, including numerous depositions, motions, written discovery, document production, etc.

8.     Immediately prior to the Petition Date, Command Center scheduled and was prepared to depose Ms. Evanson. Additionally, the parties to the Civil Action have set multiple depositions to occur both locally and out-of-state. Command Center desires to proceed with these depositions, including the depositions of the Debtors in the Civil Action.

9.     Command Center asserts that the District Court in Denver Colorado stands ready to resolve the disputes as to Command Center's claims against the Debtors. Although the Civil Action involves other parties, Command Center asserts that the Debtors were central to the scheme to plunder Command Center for their own benefit. The

-2-

Debtors' participation as a party in the final pre-trial matters, remaining discovery, and ultimately trial is necessary for complete adjudication of all of the issues and claims in the Civil Action.

10.     Pursuant to 11 U.S.C. §362(d)(1), Command Center seeks relief from the automatic stay to move forward with the Civil Action, including, but not limited to, the liquidation of Command Center's claims against the Debtors. Bankruptcy courts examine the twelve "Curtis" factors set forth in *In re Curtis,* 40 B.R. 795, 799-800 (Bankr.D.Utah 1984) when determining whether to grant relief from stay to allow pending litigation in another forum to proceed.  *Id.*

11.     In this case, this Court should consider seven of the *Curtis* factors when determining whether to grant relief from stay:

a.      Whether the relief would result in a partial or complete resolution of the issues;
b.      The lack of any connection with or interference with the bankruptcy case;
c.      Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;
d.      Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
e.      The interest of judicial economy and the expeditious and economical determination of litigation for the parties;
f.      Whether the foreign proceedings had progressed to the point where the parties were prepared for trial;  and
g.      The impact of the stay on the parties and the "balance of the hurt."

12.     Here, granting relief from the automatic stay in favor of Command Center:

a.      The Civil Action will allow Command Center to obtain complete resolution on the issues in the Civil Action, including the liquidation of its claims against the Debtors;
b.      The Civil Action will have limited interference with the proceedings in this Bankruptcy Case;
c.      The Civil Action will permit the court in the State Court to hear and determine issues of the Debtors' liability Colorado law, including the statutory fiduciary duties imposed under C.R.S. §10-2-704 (2010), over which such court has jurisdiction;
d.      A determination in State Court as to the Debtors' liability will not prejudice any other creditors or interested parties because Command Center's claim in this bankruptcy case will be an unsecured claim;
e.      Will serve the interests of judicial economy as the State Court in the Civil Action stands ready to hear and determine the issues;

f.    The trial in the Civil Action can proceed as scheduled upon the entry of an Order lifting the automatic stay; and,

g.    The impact of the stay against Command Center will not only constrain it from a final resolution of its claims against the Debtors but also inhibit the ability of this Court to make determinations as to the administration of the Debtor's bankruptcy case and if applicable, issues concerning the non-dischargeability of the Debtors' debts to Command Center. Thus, the balance of the hurt would favor granting relief from stay.

13.    For the foregoing reasons and authority, Command Center request that the Court grant it relief from the automatic stay to permit the Civil Action to proceed, pursuant to 11 U.S.C. §362(d)(1).

14.    Command Center further requests that this Court lift the 10-day stay of execution imposed by Fed.R.Bank.P. 4001(a)(3) so that the court in the Civil Action can proceed with pre-trial matters as soon as possible.

15.    Attached hereto is the Affidavit of counsel for Command Center in compliance with the provisions of the Servicemembers Civil Relief Act of 2003, 50 App.U.S.C. § 501 *et seq.* and L.B.R. 4001-1.

**WHEREFORE**, Command Center respectfully requests that this Court enter an Order granting relief from stay, allowing the Civil Action to proceed to trial with the Debtors as parties pursuant to 11 U.S.C. § 362(d)(1), and for such other and further relief as to this Court may deem appropriate.

DATED this 11th day of July, 2013.

Respectfully submitted,
BUECHLER LAW OFFICE, L.L.C.

*/s/ Kenneth J. Buechler*

Kenneth J. Buechler, #30906
1621 18th Street, Suite 260
Denver, Colorado 80202
Tel: 720-381-0045
Fax: 720-381-0382
ken@kjblawoffice.com

-4-

| | |
|---|---|
| District Court, City and County of Denver, Colorado<br>Court Address: 1437 Bannock St., Denver, CO 80202 | |
| Plaintiff(s):<br><br>**ADVANTEDGE INSURANCE GROUP, L.L.C.** a Colorado<br>limited liability company,<br>v.<br><br>**COMMAND CENTER, INC.,**  a Washington company<br>registered to do business in Colorado,<br>Defendant(s). | |
| Attorney or Party Without Attorney:<br>Name: Tamás Viski-Hánka<br>Address: 501 S. Cherry St., Suite 1060<br>         Denver, CO 80246<br>Phone Number: (303) 399-2220<br>Fax Number   : (303) 399-2228<br>E-mail: tvhlaw@hotmail.com<br>Atty. Reg. #: 18439 | ↑COURT USE ONLY↑<br>Case Number:<br><br>Ctrm:       Div: |
| **COMPLAINT** | |

COMES NOW the plaintiff, AdvantEdge Insurance Group, L.L.C., through its attorney Tamás Viski-Hánka, and for its Complaint hereby states and avers as follows:

### THE PARTIES

1.      AdvantEdge Insurance Group, L.L.C. ("Plaintiff" or "AdvantEdge") is a Colorado limited liability company with its principal office at 9777 Mt. Pyramid Ct., Suite 200, Englewood, Colorado 80112.

2.      Upon information and belief defendant Command Center, Inc. was formed in the state of Washington, and is currently registered to do business in the state of Colorado, with its principal place of business is located in 3773 W. 5th Avenue, Post Falls, ID 83854 ("Defendant").

3.      Upon information and belief World Wide Specialty Programs, Inc. is a foreign insurance brokerage company with its principal place of business at 68 South Services Road, Suite 235, Melville, NY 11747 ("World Wide").

4.      Upon information and belief AIG Global Risk Management was the underwriter at all relevant times of the insurance policies in question ("AIG").

EXHIBIT 1

## GENERAL ALLEGATIONS AND VENUE

5.     Beginning 2006 Plaintiff secured certain insurance policies for the benefit of Defendant. These insurance policies generally provided coverage for one year from the time of their inception, therefore, prior to their expiration in 2007 Plaintiff arranged for their renewal.

6.     World Wide acted as managing agent on these policies, while AIG was the insurance underwriter, and Plaintiff acted as retail agent for Defendant.

7.     On or about May 12, 2008 Plaintiff once again secured the renewal of said insurance policies for the benefit of Defendant, which included four worker's compensation policies, namely policy numbers WC 1894629, WC 622549, WC 9844189, and WC 622550 (the "WC Policies").

8.     The 2008 WC Policies provided worker's compensation coverage for Defendant from May 13, 2008 through May 13, 2009. ("Policy Period").

9.     The total premium Defendant was obligated to pay for the WC Policies was $5,930,310.00, which amount had to be paid in eight installments. The total premium included Plaintiff's flat commission of $120,000.00 ("Commission").

10.     Plaintiff's $120,000.00 Commission was not subject to adjustment, and was payable over the Policy Period.

11.     While the WC Policies were in effect in 2008 Plaintiff provided all of the necessary services pertaining to these policies, including but not limited to the issuance of a high number of worker's compensation certificates and proofs of insurance.

12.     On June 16, 2008 the Defendant notified the Plaintiff that a Broker of Record letter had been transmitted to AIG authorizing AIG to deal with a new broker, which would effectively discharge the Plaintiff as the retail broker representing the Defendant on all insurance policies referenced herein.

13.     On June 17, 2008 the Plaintiff was notified by World Wide and AIG that a Broker of Record letter had been presented to authorize the service of a new broker effective immediately. Plaintiff was provided a waiting period of five business days as an opportunity to rescind the authorization or at the end of that time, the new broker would be recognized. The new broker was recognized after the waiting period.

14.     On June 17, 2008 the AIG or its agents issued a Notice of Cancellation for Nonpayment Plus Cash Security to World Wide and Defendant with the effective cancellation date of the WC Policies as of June 30, 2008 and the Plaintiff received written notification on June 23, 2008. Transition away from the Plaintiff as the retail broker had occurred prior to the effective date of the cancellation. Thereafter the WC Policies were cancelled as of June 30, 2008.

2

15.     Defendant failed to pay Plaintiff the $120,000.00 Commission, or any part thereof.

16.     The insurance policies referred to in paragraph 6, above, also included certain general liability and umbrella liability policies. Similar to the WC Policies, in 2008 Plaintiff also secured the renewal of the general liability and umbrella liability policies, under policy numbers ##7326350 and 5474683, respectively, with the policy terms of May 12, 2008 through May 13, 2009. ("General and Umbrella Liability Policies").

17.     All work was fully performed by Plaintiff in securing these policies, and on May 16, 2008 Plaintiff received its agreed upon commission in consideration of securing the General and Umbrella Liability Policies.

18.     As stated in paragraph 13, above, on or about June 17, 2008 Defendant terminated Plaintiff's position with respect to the then active insurance policies, including the General and Umbrella Liability Policies, and upon information and belief retained the services of a new broker.

19.     Upon information and belief, on or about August 8, 2008 Defendant terminated the General and Umbrella Liability Policies with the effective date of cancellation of August 12, 2008.

20.     On or about February 9, 2009 Defendant demanded AdvantEdge to return the allegedly unearned commission on the General and Umbrella Liability Policies in the amount of $37,059.13.

21.     Venue is proper in this Court pursuant to Colo.R.Civ.P. 98.

## FIRST CLAIM FOR RELIEF
(Breach of Contract Implied in Fact to Pay For Goods and/or Services)

22.     Plaintiff reiterates and incorporates herein its foregoing allegations.

23.     Plaintiff at the instance and request of Defendant provided services to secure the WC Policies and other insurances for the year of 2008-09.

24.     Plaintiff provided such services with the reasonable expectations that it would be paid the reasonable value of such services.

25.     Defendant requested and accepted the services expecting to pay for them, or under the circumstances they knew or should have known that Plaintiff expected to be paid for the services.

3

26.    The reasonable value of such services remaining unpaid and due and owing to Plaintiff is the sum of $120,000.00 and accruing interest.

WHEREFORE, Plaintiff respectfully prays this Court to enter judgment and award damages to Plaintiff and against Defendant as proven at trial, pre and post judgment interests, cost of litigation and other relief the Court deems proper.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

27.    Plaintiff reiterates and incorporates herein its foregoing allegations.

28.    Plaintiff and Defendant had an agreement that if Plaintiff produces and services the WC Policies, Defendant would reimburse Plaintiff for such services during the term of the policies in the amount of $120,000.00 which amount was not subject to adjustment. ("Agreement").

29.    To the extent possible Plaintiff fully performed under the Agreement.

30.    Defendant breached the Agreement by non performance, and, as a result, Plaintiff suffered damages.

WHERFORE, Plaintiff respectfully prays this Court to award damages to Plaintiff and against Defendant for the breach of the Agreement as proven at trial, pre and post judgment interest, costs of litigation, and other remedies as the Court deems proper.

## THIRD CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith)

31.    Plaintiff reiterates and incorporates herein its foregoing allegations.

32.    The Agreement had an implied covenant of good faith.

33.    Defendant breached the implied covenant of good faith of the Agreement by nonperformance and, as a result, Plaintiff suffered damages.

34.    Defendant's foregoing breach of implied covenant of good faith of the Agreement consisted of actions and inactions, by way of illustration and not by limitation, of non-payment of the insurance policies on the WC Policies, which led to these policies' cancelation.

WHERFORE, Plaintiff respectfully prays this Court to award direct and consequential damages to Plaintiff for Defendant's breach of the implied covenant of good faith of the Agreement as proven at trial, pre and post judgment interest, costs of litigation, and other remedies as the Court deems proper.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

35.    Plaintiff reiterates and incorporates herein its foregoing allegations.

36.    A benefit was conferred on the Defendant by the Plaintiff by securing and servicing the WC Policies in 2008;

37.    The Defendant appreciated or realized the benefit;

38.    The Defendant accepted the benefit under such circumstances that it would be inequitable for the Defendant to retain the benefit without payment of its value.

WHERFORE, Plaintiff respectfully prays this Court to enter an award of damages to Plaintiff and against Defendant for unjust enrichment as proven at trial, pre and post judgment interest, costs of litigation, and other remedies as the Court deems proper.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Relief Pursuant to the Colorado Uniform Declaratory Judgments Act, C.R.S. 13-51-101 *et seq.*)

39.    Plaintiff reiterates and incorporates herein its foregoing allegations.

40.    By the parties' oral agreement, Plaintiff was to secure the General and Umbrella Liability Policies for the 2008-09 policy period, for the consideration of the payment of a certain commission. ("Oral Agreement").

41.    Plaintiff fully performed under such Oral Agreement, and Defendant paid Plaintiff's agreed upon commission.

42.    Thereafter, Defendant terminated Plaintiff's position as Defendant's retail agent, and through a new broker terminated, and then re-wrote the General and Umbrella Liability Policies.

43.    Subsequent to the foregoing events Defendant demanded from Plaintiff the repayment of part of the commission paid in the amount of $37,059.13, claiming that due to Defendant's cancellation of the General and Umbrella Liability Policies, through its new broker and before the expiration of said policies, it is Defendant who is entitled to the $37,059.13 commission as that portion was allegedly unearned by Plaintiff.

44.    Plaintiff refused to return the $37,059.13, consequently a controversy has arisen concerning the parties' respective rights duties and liabilities with respect to these funds and the construction of the Oral Agreement.

45.    Plaintiff is an interested person in this controversy.

5

WHERFORE, Plaintiff respectfully prays this Court to enter a declaratory order declaring the parties' respective rights duties and liabilities in the $37,059.13 commission, and without limitation to declare that:

(i)     Plaintiff is entitled to retain the $37,059.13 commission;

(ii)    Defendant is barred from demanding the return of the $37,059.13 commission; and

(iii)   Plaintiff is entitled to costs of litigation, and other remedies as the Court deems proper.

Dated: May 19, 2010.

Respectfully submitted,

THE LAW OFFICE OF TAMÁS VISKI-HÁNKA

By____/s/ Tamás Viski-Hánka____
    Tamás Viski-Hánka #18439

    Attorney for Plaintiff AdvantEdge Insurance Group, L.L.C.

Plaintiffs' Address:

AdvantEdge Insurance Group, L.L.C.
9777 Mt. Pyramid Ct., Suite 200
Englewood, CO 80112

10807..1/complaint

6

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER<br>STATE OF COLORADO<br>1437 Bannock Street, Room 256<br>Denver, Colorado  80202 | |
| Plaintiff:    ADVANTEDGE INSURANCE GROUP,<br>             L.L.C.<br><br>v.<br><br>Defendant: COMMAND CENTER, INC. | ▲ COURT USE ONLY ▲ |
| Attorney for Defendant:<br>Ian Ray Mitchell (#34887)<br>Thomas Pollart & Miller LLC<br>5600 South Quebec Street, Suite 220-A<br>Greenwood Village, CO 80111<br>Telephone: (720) 488-9586<br>Facsimile: (720) 488-9587<br>Email:  imitchell@tpm-law.com | Case No.:  2010CV4135<br><br>Division: 2 |
| **ANSWER TO COMPLAINT** | |

Defendant, by and through its counsel, THOMAS POLLART & MILLER, LLC, hereby submits its Answer to Plaintiff's Complaint as follows:

Defendant denies each and every item and allegation contained in Plaintiff's Complaint, unless expressly admitted herein.

1.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 1 of Plaintiff's Complaint.

2.      Defendant admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

3.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 3 of Plaintiff's Complaint.

4.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 4 of Plaintiff's Complaint.

5.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 5 of Plaintiff's Complaint.

EXHIBIT 2

6.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 6 of Plaintiff's Complaint.

7.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 7 of Plaintiff's Complaint.

8.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 8 of Plaintiff's Complaint.

9.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 9 of Plaintiff's Complaint.

10.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 10 of Plaintiff's Complaint.

11.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.     Defendant admits to sending a June 16, 2008 letter.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations and therefore denies the remaining allegations contained in paragraph 12 of Plaintiff's Complaint.

13.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 13 of Plaintiff's Complaint.

14.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 14 of Plaintiff's Complaint.

15.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 15 of Plaintiff's Complaint.

16.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 16 of Plaintiff's Complaint.

17.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 17 of Plaintiff's Complaint.

18.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 18 of Plaintiff's Complaint.

19.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 19 of Plaintiff's Complaint.

20.     Defendant admits the allegations contained in paragraph 20 of Plaintiff's Complaint.

21.     Defendant admits the allegations contained in paragraph 21 of Plaintiff's Complaint.

22.     Defendant incorporates herein by reference each of its responses set forth above.

23.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 23 of Plaintiff's Complaint.

24.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 24 of Plaintiff's Complaint.

25.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 25 of Plaintiff's Complaint.

26.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 26 of Plaintiff's Complaint.

27.     Defendant incorporates herein by reference each of its responses set forth above.

28.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 28 of Plaintiff's Complaint.

29.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 29 of Plaintiff's Complaint.

30.     Defendant denies the allegations contained in paragraph 30 of Plaintiff's Complaint.

31.    Defendant incorporates herein by reference each of its responses set forth above.

32.    Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 32 of Plaintiff's Complaint.

33.    Defendant denies the allegations contained in paragraph 33 of Plaintiff's Complaint.

34.    Defendant denies the allegations contained in paragraph 34 of Plaintiff's Complaint.

35.    Defendant incorporates herein by reference each of its responses set forth above.

36.    Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 36 of Plaintiff's Complaint.

37.    Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 37 of Plaintiff's Complaint.

38.    Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 38 of Plaintiff's Complaint.

39.    Defendant incorporates herein by reference each of its responses set forth above.

40.    Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 40 of Plaintiff's Complaint.

41.    Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 41 of Plaintiff's Complaint.

42.    Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 42 of Plaintiff's Complaint.

43.    Defendant admits to sending a June 16, 2008 letter.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations and therefore denies the remaining allegations contained in paragraph 43 of Plaintiff's Complaint.

44.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 44 of Plaintiff's Complaint.

45.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 45 of Plaintiff's Complaint.

Defendant denies any and all allegations asserted by Plaintiff in its Prayer for Relief.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief may be granted.

2.     Plaintiff may have failed to mitigate its injuries, damages and losses.

3.     Plaintiff's claims are barred, in whole, or in part, by one or more equitable doctrines including, but not limited to, accord, satisfaction, waiver, estoppel and laches.

4.     Plaintiff's damages, if any, are limited as defined by all applicable constitutional and statutory provisions, and applicable case law.

5.     Plaintiff's right to relief, if any, is barred by its own failure to act in good faith and/or Plaintiff has committed a material breach thereof.

6.     One or more of Plaintiff's claims are frivolous, groundless and not supported by substantial justification.

7.     Plaintiff's claims are barred by the doctrines of acceptance and ratification.

8.     Plaintiff's claims are barred by Plaintiff's own comparative or contributory negligence, fault, bad faith, misconduct, wrongful acts or improper conduct.

9.     The damages recoverable, if any, against Defendant are subject to reduction for payment from collateral sources pursuant to C.R.S. § 13-21-111.6.

10.     The damages recoverable herein are subject to all relevant statutory limitations, including, but not limited to, those set forth in C.R.S. § 13-21-101, et seq., particularly C.R.S. § 13-21-102.5.

11.     Plaintiff's claims may be barred by the applicable Statute of Limitations.

12.     Plaintiff's claims may be barred or reduced by C.R.S. 13-21-111.5

13.     The complaint may have failed to name an indispensable party.

14. Plaintiff's claims, in whole or in part, may be barred by some or all of the affirmative defenses contemplated by the rules, applicable case law, statutes or other applicable authority. To the extent plaintiff's claims may be barred by one or more of said affirmative defenses, not specifically set out above, and may be undetermined until Defendant has had the opportunity to conduct discovery. Defendant incorporates all said affirmative defenses as if fully set forth herein.

15. Defendant reserves the right to raise additional affirmative defenses as such defenses become apparent through the course of discovery.

### JURY DEMAND

**DEFENDANT DEMANDS THIS MATTER BE TRIED TO A JURY OF SIX PERSONS UPON ALL ISSUES.**

WHEREFORE, Defendant respectfully requests that Plaintiff's Complaint be dismissed with prejudice and Defendant be awarded its attorneys' fees, costs, expenses, witness fees, as well as applicable interest thereon, and such other and further relief as the Court deems just and equitable.

Respectfully submitted this 6th day of July, 2010.

THOMAS POLLART & MILLER, LLC

*The original signature of Ian Ray Mitchell is on file at Thomas Pollart & Miller, LLC*

Ian Ray Mitchell
*Attorney for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 6th day of July, 2010, I served the foregoing **ANSWER TO COMPLAINT** via LexisNexis File & Serve to the following:

Tamas Viski-Hanka, Esq.
501 S. Cherry Street, Suite 1060
Denver, CO  80246

*The original signature of Kim Brown is on file at Thomas Pollart & Miller, LLC*

Kim Brown

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER STATE OF COLORADO 1437 Bannock Street, Room 256 Denver, Colorado  80202 | |
| ADVANTEDGE INSURANCE GROUP, L.L.C., Plaintiff, v. COMMAND CENTER, INC., Defendant/Third-Party Plaintiff, v. MORETON INSURANCE OF COLORADO, LLC dba MORETON & COMPANY, Third-Party Defendant. v. WORLD WIDE SPECIALTY PROGRAMS, INC. Third-Party Defendant v. TERRY EVANSON, LYNETTE EVANSON and KEITH ANDERSON Third-Party Defendants | ▲ COURT USE ONLY ▲ |
| Attorneys for Defendant/Third-Party Plaintiff: Heather S. Cleary (#39784) Thomas L. Kanan (#10558) 999 18th Street, Suite 3100 Denver, CO 80202 Telephone:  (303) 675-4414 Facsimile:  (303) 297-2337 Email:  heather.cleary@Ritsema-Lyon.com; tom.kanan@ritsema-lyon.com | Case No.:  2010CV4135 Courtroom:  414 |
| **THIRD AMENDED ANSWER AND COUNTERCLAIMS** | |

EXHIBIT 3

Defendant, by and through its counsel, Ritsema & Lyon, P.C., hereby submits its Third Amended Answer, Counterclaims, and Claims against AdvantEdge Insurance Group, L.L.C. and Moreton & Company, Lynette Evanson, Terry Evanson, Keith Anderson, and states as follows:

Defendant/Third-Party Plaintiff Command Center, Inc. hereby files its Amended Answer in response to Plaintiff AdvantEdge, LLC's Amended Complaint filed on May 25, 2011. Command Center, Inc. also asserts and incorporates its Counterclaims and files it Third Amended Counterclaims and Claims. Command Center, Inc. has filed a contemporaneous Unopposed Motion to Amend its Counterclaims and Claims pursuant to C.R.C.P. Rule 15(c).

**Attached, as Exhibit A, to Command Center Inc.'s Third Amended Answer and Counterclaims is a Certificate of Review from John Kezer, Esq., Command's expert witness.**

Defendant denies each and every item and allegation contained in Plaintiff's Complaint, unless expressly admitted herein.

1.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 1 of Plaintiff's Complaint.

2.      Defendant admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

3.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 3 of Plaintiff's Complaint.

4.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 4 of Plaintiff's Complaint.

5.      Defendant admits the allegations contained in paragraph 5 of Plaintiff's Complaint.

6.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 6 of Plaintiff's Complaint.

7.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 7 of Plaintiff's Complaint.

8.      Defendant admits the allegations contained in paragraph 5 of Plaintiff's Complaint.

9.      Defendant denies the allegations contained in paragraph 9 of Plaintiff's Complaint. Defendant was only obligated to the pay the premium for the policy while it was in force. The total premium may have included a "flat commission." However, this commission

was not Plaintiff's because Plaintiff is an unlicensed insurance agent and the policy states the premium would have gone to World Wide.

10.      Defendant denies the allegations contained in paragraph 10 of Plaintiff's Complaint.  The term flat commission is not defined by the policy and can have many interpretations.  Additionally, the commission was remunerated over the policy period.  Finally, Colorado insurance law requires the return of any unearned premium and commission upon the cancellation of a policy for insurance.

11.      Defendant denies the allegations contained in paragraph 11 of Plaintiff's Complaint. During deposition, AdvantEdge could not define activities it performed which would have entitled it to unearned commissions or excess premium.

12.      Defendant admits to sending a June 16, 2008 broker of record letter.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations and therefore denies the remaining allegations contained in paragraph 12 of Plaintiff's Complaint.

13.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 13 of Plaintiff's Complaint.

14.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 14 of Plaintiff's Complaint.

15.      Defendant denies the allegations contained in paragraph 15 of Plaintiff's Complaint.  Plaintiff was not owed $120,000.00 in commission or any part thereof for two reasons.  Plaintiff is an unlicensed insurance agency and can not legally be receive commission payments.  Also, Plaintiff had an agreement with World Wide in which World Wide was to receive $60,000.00 of the commission payment.  Finally, Plaintiff's agreement to receive any commission at all was formed with World Wide, not Defendant.

16.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 16 of Plaintiff's Complaint.

17.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 17 of Plaintiff's Complaint.

18.      Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 18 of Plaintiff's Complaint.

19.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 19 of Plaintiff's Complaint.

20.     Defendant admits the allegations contained in paragraph 20 of Plaintiff's Complaint.

21.     Defendant admits the allegations contained in paragraph 21 of Plaintiff's Complaint.

22.     Defendant incorporates herein by reference each of its responses set forth above.

23.     Defendant denies the allegations contained in paragraph 23 of Plaintiff's Complaint. The request for renewal initiated with Plaintiff, who contacted Command to institute the renewal process.

24.     Defendant denies the allegations contained in paragraph 24 of Plaintiff's Complaint. Plaintiff as an unlicensed insurance agency had no expectation that it would receive payment in contravention to Colorado law which prohibits said payments.

25.     Defendant denies the allegations contained in paragraph 25 of Plaintiff's Complaint. Any agreement to pay Plaintiff was between World Wide and the Plaintiff.

26.     Defendant denies the allegations contained in paragraph 26 of Plaintiff's Complaint.  Plaintiff, as an unlicensed entity could not receive the said $120,000.00 in commission, nor was the $120,000.00 at any time due and owing to Plaintiff. The binder clearly stated that World Wide would receive the commission.  Plaintiff testified that World Wide agreed to pay Plaintiff $60,000.00 for the placement of the policy.

27.     Defendant incorporates herein by reference each of its responses set forth above.

28.     Defendant denies the allegations contained in paragraph 28 of Plaintiff's Complaint.  Plaintiff testified that this agreement was between it and World Wide.  The agreement called for the commission to be split between World Wide and Plaintiff.  However, this violates Colorado law because Plaintiff was an unlicensed insurance agency.

29.     Defendant denies the allegations contained in paragraph 29 of Plaintiff's Complaint. Plaintiff did not properly shop Defendant's policy to the insurance market.

30.     Defendant denies the allegations contained in paragraph 30 of Plaintiff's Complaint. Plaintiff was unlicensed to that which it agreed to do; therefore, all claims are based on an illegal contract and are unenforceable.

31.     Defendant incorporates herein by reference each of its responses set forth above.

32.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 32 of Plaintiff's Complaint.

33.     Defendant denies the allegations contained in paragraph 33 of Plaintiff's Complaint.

34.     Defendant denies the allegations contained in paragraph 34 of Plaintiff's Complaint.

35.     Defendant incorporates herein by reference each of its responses set forth above.

36.     Defendant denies the allegations contained in paragraph 36 of Plaintiff's Complaint.  The commission was to be paid to World Wide.  Plaintiff could not receive payment for commissions because it is an unlicensed insurance agency.   Additionally, with the cancellation of a policy all unearned premium and commission are returned to the insured pursuant to Colorado law.

37.     Defendant denies the allegations contained in paragraph 38 of Plaintiff's Complaint.  Plaintiff could not legally receive its commissions because it was an unlicensed insurance agency.  The commissions would have been owed to World Wide, not Plaintiff.

38.     Defendant incorporates herein by reference each of its responses set forth above.

39.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 40 of Plaintiff's Complaint.

40.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 40 of Plaintiff's Complaint.

41.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 41 of Plaintiff's Complaint.

42.     Defendant incorporates herein by reference each of its responses set forth above.

43.     Defendant admits to sending a June 16, 2008 letter.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations and therefore denies the remaining allegations contained in paragraph 43 of Plaintiff's Complaint.

44.     Defendant denies the allegations contained in paragraph 44 of Plaintiff's Complaint.  The policies they received were overpriced and carried with them high collateral expenditures.

45.     Defendant denies the allegations contained in paragraph 45 of Plaintiff's Complaint.  Defendant properly cancelled its policies.  Colorado Insurance law requires the return of unearned premium and commissions in such a circumstance.  Additionally, because Plaintiff was unlicensed to that which it agreed to do all claims are based on an illegal contract and are unenforceable.

46.     Defendant incorporates herein by reference each of its responses set forth above.

47.     Defendant denies the allegations contained in paragraph 45 of Plaintiff's Complaint.  Defendant properly cancelled its policies.  Colorado Insurance law requires the return of unearned premium and commissions in such a circumstance.  Additionally, because Plaintiff was unlicensed to that which it agreed to do all claims are based on an illegal contract and are unenforceable.

48.     Defendant denies the allegations contained in paragraph 45 of Plaintiff's Complaint.  Defendant properly cancelled its policies.  Colorado Insurance law requires the return of unearned premium and commissions in such a circumstance.  Additionally, because Plaintiff was unlicensed to that which it agreed to do all claims are based on an illegal contract and are unenforceable.

49.     Defendant is without sufficient knowledge to form a belief as to the truth of the allegations and therefore denies the allegations contained in paragraph 41 of Plaintiff's Complaint.

50.     Defendant admits that it demanded the return of its $37,059.13.  Defendant properly cancelled its policies.  Colorado Insurance law requires the return of unearned premium and commissions in such a circumstance.  Additionally, because Plaintiff was unlicensed to that which it agreed to do all claims are based on an illegal contract and are unenforceable.

51.     Defendant admits the allegations contained in paragraph 51 of Plaintiff's Complaint.

52.     Defendant admits the allegations contained in paragraph 52 of Plaintiff's Complaint.

Defendant denies any and all allegations asserted by Plaintiff in its Prayer for Relief.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief may be granted.

6

2.     Plaintiff's claims are barred, in whole, or in part, by one or more equitable doctrines including, but not limited to, accord, satisfaction, waiver, estoppel and laches.

3.     Plaintiff's damages, if any, are limited as defined by all applicable constitutional and statutory provisions, and applicable case law.

4.     Plaintiff's right to relief, if any, is barred by its own failure to act in good faith and/or Plaintiff has committed a material breach thereof.

5.     One or more of Plaintiff's claims are frivolous, groundless and not supported by substantial justification.

6.     Plaintiff's claims are barred by Plaintiff's own comparative or contributory negligence, fault, bad faith, misconduct, wrongful acts or improper conduct.

7.     The damages recoverable, if any, against Defendant are subject to reduction for payment from collateral sources pursuant to C.R.S. § 13-21-111.6.

8.     The damages recoverable herein are subject to all relevant statutory limitations, including, but not limited to, those set forth in C.R.S. § 13-21-101, et seq., particularly C.R.S. § 13-21-102.5.

9.     Plaintiff's claims may be barred by the applicable Statute of Limitations.

10.    Plaintiff's claims may be barred or reduced by C.R.S. 13-21-111.5

11.    The complaint may have failed to name an indispensable party.

12.    Plaintiff's claims may be based on an illegal contract.

13.    Plaintiff may be unlicensed to that which it promised to do.

14.    Plaintiff may have been the first to breach any contract implied or otherwise.

15.    Plaintiff's claims, in whole or in part, may be barred by some or all of the affirmative defenses contemplated by the rules, applicable case law, statutes or other applicable authority.  To the extent plaintiff's claims may be barred by one or more of said affirmative defenses, not specifically set out above, and may be undetermined until Defendant has had the opportunity to conduct discovery.  Defendant incorporates all said affirmative defenses as if fully set forth herein.

16.    Defendant reserves the right to raise additional affirmative defenses as such defenses become apparent through the course of discovery.

## I.    COUNTER CLAIMS

1.    Command Center, Inc., ("Command") is a Washington Corporation, with a principal place of business of 3773 W 5th Ave, Post Falls, ID 83854.

2.    Upon information and belief, AdvantEdge Insurance Group, LLC ("AdvantEdge") is an unregistered Colorado Limited Liability Company, with a principal place of business of 9777 Mt. Pyramid Ct., Suite 200, Englewood, CO 80112.

3.    Upon information and belief, Moreton Insurance of Colorado, LLC dba Moreton & Company ("Moreton"), is a Colorado limited liability company with its principal place of business at 4600 S. Ulster Street, Suite 380, Denver, CO 80237.

4.    Upon information and belief, Terry Evanson was at all relevant times a licensed insurance producer in the State of Colorado with a principal address of 10175 Oneida St., Littleton, CO 80124.

5.    Upon information and belief, Keith Anderson was at all relevant times a licensed insurance producer in the State of Colorado with a principal address of 1032 English Sparrow Trail, Highlands Ranch, CO 80129.

6.    Upon information and belief, Lynette Evanson was the sole member manager of AdvantEdge at all relevant times, with a principal place of business of 9777 Mt. Pyramid Ct., Suite 200, Englewood, CO 80112.

## General Allegations

7.    Mr. Evanson created a relationship of trust with the senior management of Command. This relationship existed for many years.

8.    Upon information and belief, Mr. Evanson was the Chairman of Moreton.

9.    Upon information and belief, as the Chairman of Moreton Mr. Evanson introduced Mr. Anderson to Command.

10.    Upon information and belief, Command purchased Workers' Compensation Insurance, General Liability Insurance, Umbrella Coverage, Directors' and Officers' Coverage, and, Employee Benefits through Moreton, AdvantEdge, Mr. Evanson, and Mr. Anderson.

11.    Upon information and belief, Mr. Evanson as Chairman of Moreton and Mr. Anderson, appearing as an employee of Moreton, directed Command to remit its premium payments to AdvantEdge for Command's Workers' Compensation insurance, General Liability insurance, and Umbrella Coverage.

12.     Upon information and belief, Moreton, AdvantEdge, Mr. Evanson, and Mr. Anderson did not properly market Command's insurance business.

13.     Upon information and belief, Mr. Evanson and Mr. Anderson inflated the amount premium due and retained the extra money.

14.     Upon information and belief, Mr. Evanson's and Mr. Anderson's practice of inflating the premium amount and retaining the excess premium was carried out over the 2006-2007, 2007-2008, and the 2008-2009 policy years. However, the 2008-2009 policy year contains only one months payment of premiums.

15.     Upon information and belief Moreton, AdvantEdge, and Mr. Evanson failed to supervise the activities of Mr. Evanson and Mr. Anderson.

## II.     COUNTER CLAIMS AGAINST ADVANTEDGE, MORETON, TERRY EVANSON AND KEITH ANDERSON, JOINTLY AND SEVERALLY

### First Claim for Relief
### (Professional Malpractice; Transactional Malpractice)

16.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 15 of this Counterclaim as if fully set forth herein.

17.     Moreton and AdvantEdge did not act as a reasonable insurance agency would have acted by failing to supervise, monitor, review, or audit its accounts, agents, or employees. Moreton and AdvantEdge did not act as a reasonable insurance agency would have by placing producers, employees, and others in positions of control over large sums of money without supervision.

18.     Mr. Evanson did not act as a reasonable insurance agent would have acted by failing to properly solicit bids for Command's policies, by retaining unearned premiums, and by failing to monitor and the activities of himself and Mr. Anderson.

19.     Mr. Anderson did not act as a reasonable insurance agent would have acted by failing to properly solicit bids for Command's policies, by retaining excess premiums, and by failing to monitor and the activities of himself and Mr. Anderson.

20.     Upon information and belief, Moreton's, AdvantEdge's, Mr. Evanson's and Mr. Anderson's failure to act as a reasonable insurance producer would, caused Command's damages and losses.

21.     In the alternative, Command believes the contract between it and AdvantEdge is an illegal contract and unenforceable. However, to the extent a contract is found to exist

between AdvantEdge and Command, Command asserts all counterclaims in contract; including, but not limited to, breach of contract, breach of implied contract, and unjust enrichment.

### Second Claim for Relief
### (Breach of Fiduciary Duty)

21.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 20 of this Counterclaim as if fully set forth herein.

22.     Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson were acting in a fiduciary capacity for Command with respect to the placement and handling of its insurance policies.

23.     Upon information and belief, Moreton, AdvantEdge, Terry Evanson and Keith Anderson breached their fiduciary duties to Command.

24.     Upon information and belief, Command has suffered damages and losses.

25.     Upon information and belief, Moreton's, AdvantEdge's, Mr. Evanson's and Mr. Anderson's breach of fiduciary duties caused Command's damages and losses.

### Third Claim for Relief
### (Civil Theft; Special Remedy of Rights in Stolen Property)

26.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 25 of this Counterclaim as if fully set forth herein.

26.     Upon information and belief, Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson knowingly obtained or exercised control of Command's premium payments, including the excess premium, by deception.

27.     Upon information and belief, Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson intended to deprive Command of the excess premium.

28.     Upon information and belief, Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson knowingly used and concealed the excess premium in such a manner as to deprive Command of its use and benefit.

29.     Upon information and belief, Command is entitled to the remedies of treble damages, attorneys fees and costs pursuant to C.R.S. § 18-4-405

## Fourth Claim for Relief
### (Fraud; Affirmative Fraud; Deceit Based on Fraud)

30.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 29 of this Counterclaim as if fully set forth herein.

31.     Upon information and belief, AdvantEdge through employees of Moreton, specifically, Mr. Evanson and Mr. Anderson falsely represented the amount of the premium owed to AIG for Command's Workers' Compensation, General Liability, and Umbrella insurance policies covering Command from 2006-2007; 2007-2008 and 2008-2009.

32.     The amount of premium owed is material..

33.     Upon information and belief, Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson were aware that the premium amounts it charged Command were false.

34.     Upon information and belief, Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson made the representation regarding premium amounts with the intent that Command would rely on their representations.

35.     Command relied on Moreton's, AdvantEdge's, Mr. Evanson's and Mr. Anderson's representations.

36.     Command's reliance was justifiable.

37.     Upon information and belief, Command's reliance on Moreton's, AdvantEdge's, Mr. Evanson's and Mr. Anderson's representations caused damages and losses to Command.

## Fifth Claim for Relief
### (Negligence; Heightened Standard of Care)

38.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 37 of this Counterclaim as if fully set forth herein.

39.     Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson as insurance agencies and producers had a duty to act as a reasonable insurance agency or producer would.

40.     Upon information and belief, Moreton, AdvantEdge, Mr. Evanson and Mr. Anderson breached their duties to act as a reasonable insurance agencies and producers to Command by failing to shop Command's business with appropriate insurers; by failing to ensure that proper premium amounts were requested; by failing to return excess premium payments; and, by failing to monitor the activities of Mr. Evanson and Mr. Anderson.

41.     Command has been damaged by Moreton's, AdvantEdge's, Mr. Evanson's and Mr. Anderson's negligence.

42.     Upon information and belief, a special/confidential relationship existed between the parties.

### III.     COUNTERCLAIMS AGAINST ADVANTEDGE

### Sixth Claim for Relief
### (Negligent Supervision)

43.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 42 of this Counterclaim as if fully set forth herein.

44.     Upon information and belief, AdvantEdge hid behind the mantle of Moreton.

45.     Ms. Evanson is the sole member manager of AdvantEdge.

46.     AdvantEdge, as an insurance agency, had a duty to supervise the activities of its corporate insiders, Mr. Evanson and Mr. Anderson.

47.     AdvantEdge, as an unlicensed insurance agency, had a duty to prevent an unreasonable risk of harm from Mr. Evanson and Mr. Anderson, who were placed in positions of handling large amounts of client funds.

48.     Upon information and belief, AdvantEdge, with Mr. Anderson at the helm, knew or should have known that Mr. Evanson and Mr. Anderson misappropriated Command's funds and failed to properly shop Command's insurance business.

49.     AdvantEdge as an unlicensed insurance agency owed a duty to Command to supervise its agents handling large amounts of client funds.

50.     Upon information and belief, AdvantEdge knew or should have known that Mr. Evanson and Mr. Anderson had a propensity to and were misappropriating large amounts of money from their client, Command. Specifically, Mr. Anderson and Mr. Evanson profited individually from the transaction and knew they had misappropriated large sums of money from Command.

51.     Upon information and belief, AdvantEdge knew or should have known that the misappropriation of funds would cause harm to its client, Command.

### Seventh Claim for Relief
### (Piercing the Corporate Veil – Special Remedy)

52.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 51 of this Counterclaim as if fully set forth herein.

53.     Upon information and belief, AdvantEdge was used as the alter ego of Terry Evanson and Keith Anderson.

54.     Upon information and belief, AdvantEdge was corporate fiction used to perpetrate fraud on Command.

55.     Upon information and belief, the equities demand that the piercing of the corporate veil of AdvantEdge to allow recovery of any judgment from the Sole Member Manager, Lynette Evanson. The equities also demand that the piercing of the corporate veil of AdvantEdge to allow recovery of any judgment from corporate insiders Terry Evanson and Keith Anderson.

### IV.     CLAIMS AGAINST MORETON

### Eighth Claim for Relief
### (Negligent Supervision)

56.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 55 of this Counterclaim as if fully set forth herein.

57.     Upon information and belief, Moreton of Colorado appeared to employ Mr. Evanson and Mr. Anderson at all relevant times.

58.     Upon information and belief, Mr. Evanson was the Chairman of Moreton of Colorado and a 25% shareholder of Moreton.

59.     Upon information and belief, Moreton of Colorado, as an insurance agency, had a duty to supervise its agents and employees, including Mr. Evanson and Mr. Anderson.

60.     Upon information and belief, Moreton of Colorado, as an insurance agency, had a duty to prevent an unreasonable risk of harm from its employees, including Mr. Evanson and Mr. Anderson, who were placed in positions of handling large amounts of client funds.

61.     Upon information and belief, Moreton of Colorado, with Mr. Evanson at the helm, knew or should have known that Mr. Evanson and Mr. Anderson misappropriated Command's funds and failed to properly shop Command's insurance business.

13

62.     Upon information and belief, Moreton of Colorado as an insurance agency owed a duty to Command to supervise its agents handling large amounts of client funds.

63.     Upon information and belief Moreton of Colorado knew or should have known that Mr. Evanson and Mr. Anderson had a propensity to and were misappropriating large amounts of money from their client, Command.   Specifically, Mr. Evanson profited, individually, from the transaction and knew that he and Mr. Anderson had misappropriated large sums of money from Command.

64.     Upon information and belief, Moreton of Colorado knew or should have known that the misappropriation of funds would cause harm to its client, Command.

### Ninth Claim for Relief
### (Respondeat Superior)

65.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 64 of this Counterclaim as if fully set forth herein.

66.     Upon information and belief, Moreton & Company employed Terry Evanson and Keith Anderson to act as insurance producers on their behalf from 2006 through 2008.   Terry Evanson and Keith Anderson acts or omissions to act are the acts of Moreton.

67.     Upon information and belief, the act of in placing a policy with an outrageously over-inflated premium from 2006 through 2008, by Terry Evanson and Keith Anderson were performed on behalf of Moreton & Company.

68.     Upon information and belief, the acts of in placing a policy with an outrageously over-inflated premium from 2006 through 2008, by Terry Evanson and Keith Anderson were within the course and scope of Terry Evanson's and Keith Anderson's employment with Moreton & Company.

69.     Upon information and belief, the acts of charging excess premium from 2006 through 2008 by Terry Evanson and Keith Anderson were performed on behalf of Moreton & Company.

70.     Upon information and belief, the acts of charging excess premium from 2006 through 2008, by Terry Evanson and Keith Anderson were within the course and scope of Terry Evanson's and Keith Anderson's employment with Moreton & Company.

### Tenth Claim for Relief
### (Breach of Implied Contract)

71.     Command Center hereby incorporates the allegations contained in Paragraphs 1 through 70 of this Counterclaim as if fully set forth herein.

72.   An implied in fact contract existed between Command Center, Inc., and Moreton & Company, in which Moreton & Company was to obtain quotes and information on premiums on insurance policies for Command Center, Inc.

73.   Moreton & Company failed to perform, which resulted in damages in the form of costs and expenditures related to their failure to act within the standard of care and failed to properly review the market for said policies from 2006 to 2008, obtain reasonable and competitive information on policies and provide the necessary documentation to other parties in order to obtain appropriate coverage and appropriate premium and other financing information related to the cost of said policies.

74.   Moreton & Company's breach, through its agents Evanson and Anderson, caused Command Center, Inc. to pay unreasonably high premiums from 2006-2008 and other collateral expenditures, including, but not limited to, replacement costs and fees, penalties for early cancellations, and other additional costs.

### Eleventh Claim for Relief
### (Breach Contract)

75.   Command Center hereby incorporates the allegations contained in Paragraphs 1 through 74 of this Counterclaim as if fully set forth herein.

76.   A contract existed between Command Center, Inc., and Moreton & Company, in which Moreton & Company was to obtain quotes and information on premiums on insurance policies for Command Center, Inc.

77.   Moreton & Company failed to perform, which resulted damages in the form of costs and expenditures related to their failure to act within the standard of care and failed to properly review the market for said policies from 2006 to 2008, obtain reasonable and competitive information on policies and provide the necessary documentation to other parties in order to obtain appropriate coverage and appropriate premium and other financing information related to the cost of said policies.

78.   Moreton & Company's breach, through its agents Evanson and Anderson, caused Command Center, Inc. to pay unreasonably high premiums from 2006-2008 and other collateral expenditures, including, but not limited to, replacement costs and fees, penalties for early cancellations, and other additional costs.

**WHEREFORE**, Command Center prays that judgment be entered in its favor and against AdvantEdge, Moreton, Mr. Evanson, and Mr. Anderson that Command Center be awarded its damages, costs, attorneys' fees, and such other and further relief as the Court may deem proper

Respectfully submitted this 28th day of March, 2012.

Ritsema & Lyon, P.C.

_____
Heather S. Cleary
Thomas L. Kanan
*Attorneys for Defendant/Third-Party Plaintiff*

16

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street, Room 256<br>Denver, Colorado 80202 | |
| **Plaintiff:**<br><br>ADVANTEDGE INSURANCE GROUP, LLC,<br><br>v. | |
| **Defendant/Third Party Plaintiff:**<br><br>COMMAND CENTER, INC.,<br>v. | |
| **Third Party Defendant:**<br><br>MORETON INSURANCE OF COLORADO, LLC dba MORETON & COMPANY,<br><br>v. | |
| **Third Party Defendant:**<br><br>WORLD WIDE SPECIALTY PROGRAMS, INC.,<br>v. | |
| **Individual Third Party Defendants:**<br><br>TERRY EVANSON, LYNETTE EVANSON and KEITH ANDERSON. | Δ COURT USE ONLY Δ |
| **Attorneys for Individual Third Party Defendants:**<br>**Terry Evanson and Keith Anderson**<br>William C. Brittan, Atty. Reg. #17643<br>Benjamin P. Parrott, Atty. Reg. #41269<br>CAMPBELL KILLIN BRITTAN & RAY, LLC<br>270 Saint Paul Street, Suite 200<br>Denver, Colorado 80206<br>Phone: (303) 322-3400<br>Fax: (303) 322-5800<br>Email: bbrittan@ckbrlaw.com<br>Email: bparrott@ckbrlaw.com | Case No: 2010-CV-4135<br><br>Courtroom: 414 |

EXHIBIT 4

---

### ANSWER OF TERRY EVANSON TO FIRST, SECOND, THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF OF COMMAND CENTER, INC.

---

Third Party Defendant, Terry Evanson ("Evanson") through his attorneys, Campbell Killin Brittan & Ray, LLC, for his Answer to the First, Second, Third, Fourth, and Fifth Claims For Relief of Command Center, Inc. ("Command Center") states as follows:

### INTRODUCTORY ALLEGATIONS

1.      Evanson lacks sufficient information to admit or deny the allegations in paragraph 1, and therefore denies the same.

2.      Evanson lacks sufficient information to admit or deny the allegations in paragraph 2, and therefore denies the same.

3.      Evanson admits the allegations in paragraph 3.

4.      Evanson admits the allegations in paragraph 4.

5.      Evanson lacks sufficient information to admit or deny the allegations in paragraph 5, and therefore denies the same.

6.      Evanson lacks sufficient information to admit or deny the allegations in paragraph 6, and therefore denies the same.

### GENERAL ALLEGATIONS

7.      Evanson admits that he had a relationship with certain individuals who became part of the management of Command Center, but denies the remaining allegations of paragraph 7 due to vagueness.

8.      Evanson admits that from approximately June, 2008 until he left Moreton, he had the title of "Chairman". Except as insofar admitted, the remaining allegations of paragraph 8 are denied.

9.      It is admitted that Evanson introduced Anderson to certain individuals associated with Command Center. Except as insofar admitted, the remaining allegations of paragraph 9 are denied.

10.      Evanson admits that Command Center utilized the services of Moreton to obtain Directors' and Officers' coverage and Employee Benefits coverage for certain policy years. Except as insofar admitted, the remaining allegations of paragraph 10 are denied.

11.      As currently phrased, Evanson denies the allegations in paragraph 11.

- 2 -

12.     Evanson lacks information regarding what efforts were made by AdvantEdge or Anderson to market Command Center's insurance business placed by them, and therefore denies the same.  Evanson denies the remaining allegations of paragraph 12.

13.     Evanson denies the allegations in paragraph 13.

14.     Evanson denies the allegations in paragraph 14.

15.     Evanson denies the allegations in paragraph 15.

## II.     COUNTER CLAIMS AGAINST ADVANTEDGE, MORETON, TERRY EVANSON AND KEITH ANDERSON, JOINTLY AND SEVERALLY

### First Claim for Relief
### (Professional Malpractice; Transactional Malpractice)

16.     Evanson adopts and restates his responses to all prior paragraphs as though fully set forth herein.

17.     Evanson denies the allegations in paragraph 17.

18.     Evanson denies the allegations in paragraph 18.

19.     Evanson denies the allegations in paragraph 19.

20.     Evanson denies the allegations in paragraph 20.

21.     The allegations contained in paragraph 21 are not directed against this Third-Party Defendant.  To the extent that the allegations may be deemed to be pled against this Third-Party Defendant, they are denied.

### Second Claim for Relief
### (Breach of Fiduciary Duty)

21. (sic) Evanson adopts and restates his responses to all prior paragraphs as though fully set forth herein.

22.     Evanson denies the allegations in paragraph 22.

23.     Evanson denies the allegations in paragraph 23.

24.     Evanson denies the allegations in paragraph 24.

25.     Evanson denies the allegations in paragraph 25.

- 3 -

**Third Claim for Relief**
**(Civil Theft; Special Remedy of Rights in Stolen Property)**

26.    Evanson adopts and restates his responses to all prior paragraphs as though fully set forth herein.

26. (sic) Evanson denies the allegations in paragraph 26.

27.    Evanson denies the allegations in paragraph 27.

28.    Evanson denies the allegations in paragraph 28.

29.    Evanson denies the allegations in paragraph 29.

**Fourth Claim for Relief**
**(Fraud; Affirmative Fraud; Deceit Based on Fraud)**

30.    Evanson adopts and restates his responses to all prior paragraphs as though fully set forth herein.

31.    Evanson denies the allegations in paragraph 31.

32.    Evanson denies the allegations in paragraph 32.

33.    Evanson denies the allegations in paragraph 33.

34.    Evanson denies the allegations in paragraph 34.

35.    Evanson denies the allegations in paragraph 35.

36.    Evanson denies the allegations in paragraph 36.

37.    Evanson denies the allegations in paragraph 37.

### Fifth Claim for Relief
### (Negligence; Heightened Standard of Care)

38.     Evanson adopts and restates his responses to all prior paragraphs as though fully set forth herein.

39.     Any duty owed by this Third-Party Defendant is a matter of law and not of pleading and therefore Evanson denies the allegations contained in paragraph 39.

40.     Evanson denies the allegations in paragraph 40.

41.     Evanson denies the allegations in paragraph 41.

42.     Evanson denies the allegations in paragraph 42.

## III.     COUNTERCLAIMS AGAINST ADVANTEDGE

### Sixth Claim for Relief
### (Negligent Supervision)

Paragraphs 43 – 51.  The allegations of Command Center's Sixth Claim for Relief are not directed against this Third Party Defendant and no response is made thereto.  To the extent that a response is necessary, Evanson denies the allegations of paragraphs 43 – 51.

### Seventh Claim for Relief
### (Piercing the Corporate Veil – Special Remedy)

52.     Evanson adopts and restates his responses to all prior paragraphs as though fully set forth herein.

53.     Evanson denies the allegations in paragraph 53.

54.     Evanson denies the allegations in paragraph 54.

55.     Evanson denies the allegations in paragraph 55.

## IV.   CLAIMS AGAINST MORETON

### Eighth Claim for Relief
### (Negligent Supervision)

Paragraphs 56 – 64.  The allegations of Command Center's Eighth Claim for Relief are not directed against this Third Party Defendant and no response is made thereto.  To the extent that a response is necessary, Evanson denies the allegations of paragraphs 56 – 64.

### Ninth Claim for Relief
### (Respondeat Superior)

Paragraphs 65 – 70.  The allegations of Command Center's Ninth Claim for Relief are not directed against this Third Party Defendant and no response is made thereto.  To the extent that a response is necessary, Evanson denies the allegations of paragraphs 65 – 70.

### Tenth Claim for Relief
### (Breach of Implied Contract)
Paragraphs 71 – 74.  The allegations of Command Center's Tenth Claim for Relief are not directed against this Third Party Defendant and no response is made thereto.  To the extent that a response is necessary, Evanson denies the allegations of paragraphs 71 – 74.

### Eleventh Claim for Relief
### (Breach Contract)

Paragraphs 75 – 78.  The allegations of Command Center's Eleventh Claim for Relief are not directed against this Third Party Defendant and no response is made thereto.  To the extent that a response is necessary, Evanson denies the allegations of paragraphs 75 – 78.

### GENERAL DENIAL

Evanson denies each and every allegation not specifically admitted herein.

Wherefore, Terry Evanson denies that Command Center, Inc. is entitled to any relief against him whatsoever and requests that the Court dismiss Command Center, Inc.'s claims and for all such other and further relief to which he is entitled, including, but not limited to an award of attorneys' fees and costs.

### DEFENSES

1.      Command Center's claims, in whole or in part, fail to state a claim upon which relief can be granted.

- 6 -

2.      Command Center's claims are barred by the doctrines of waiver, estoppel, set-off and unclean hands.

3.      Command Center's claims are substantially groundless, frivolous, and made in bad faith.

4.      The economic loss rule bars Command Center's claims.

5.      Command Center's claims, in whole or in part, are barred by the applicable statutes of limitations.

6.      Command Center ratified the actions of this Third Party Defendant, and therefore has no claim.

7.      Command Center is contributarily negligent for any losses or damages incurred by it.

8.      Command Center's claims are barred by laches.

9.      Command Center assumed the risk associated with the transactions in issue.

10.     Command Center failed to mitigate its damages, if any.

11.     Any damages suffered by Command Center were caused by another entity or person over which this Third Party Defendant had no control.

12.     Any contract claim asserted by Command Center against this Third Party Defendant fails because of a lack of consideration.

13.     Command Center's claims may be barred or reduced by C.R.S. § 13-21-111.5.

14.     Command Center's claims of fraud and civil theft are not plead in accordance with C.R.C.P. 9.

Respectfully Submitted,
CAMPBELL KILLIN BRITTAN & RAY, LLC

By: _s/William C. Brittan_
        William C. Brittan, #17643
        Benjamin P. Parrott, #41269

Attorneys for Individual Third Party Defendants Terry Evanson and Keith Anderson

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2012, a true and correct copy of the foregoing **ANSWER OF TERRY EVANSON TO FIRST, SECOND, THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF OF COMMAND CENTER, INC.** was electronically filed and served via LexisNexis and/or deposited in the United States mail, postage prepaid, addressed as follows:

Scott D. Kumpf
Royal E.S. Charsley
Kumpf, Charsley, & Hansen LLC
9635 Maroon Circle, Suite 230
Englewood, CO 80112

Heather S. Cleary
Thomas L. Kanan
Ritsema & Lyon PC
999 18th Street, Suite 3100
Denver, CO 80202

Michael J. Carrigan, Esq.
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
P.O. Box 8749
Denver, CO 80201-8749

Robert Thomas, Esq.
Holland & Hart LLP
6380 South Fiddler's Green Circle, Suite 500
Greenwood Village, CO 80111

Geraldine A. Brimmer, Esq.
Holland & Hart LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, CO 80302

Thomas J. Wolf, Esq.
Mark E. Lacis, Esq.
Ireland Stapleton Pryor and Pascoe, PC
1675 Broadway, Suite 2600
Denver, CO 80202

Michael Carrington, Esq.

- 8 -

T. Michael Carrington, P.C.
5347 South Valentia Way, Suite 310
Greenwood Village, CO 80111

*s/ Andrea Davis*
Andrea Davis

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO**<br>Court Address:    1437 Bannock St.<br>                 Denver, CO 80202 | |
| **ADVANTEDGE INSURANCE GROUP, L.L.C.,** a Colorado limited liability company,<br>       Plaintiff,<br><br>v.<br><br>**COMMAND CENTER, INC.,** a Washington company registered to do business in Colorado,<br>       Defendant/Third-Party Plaintiff,<br><br>v.<br><br>**MORETON INSURANCE OF COLORADO, LLC,**<br>       Third-Party Defendant.<br>v.<br><br>**WORLDWIDE SPECIALTY PROGRAMS, INC.**<br>       Third-Party Defendant<br>v.<br><br>TERRY EVANSON, LYNETTE EVANSON, and KEITH ANDERSON<br>Third Party Defendants | ▲ COURT USE ONLY ▲<br><br>Case Number:  10CV4135<br><br>Div.:          Ctrm.: 414 |
| Attorney For Third Party Defendant Lynette Evanson :<br>Attorney Name:    T. Michael Carrington<br>                     Law Offices of T. Michael Carrington, P.C.<br><br>Address:           5347 S. Valentia Way,<br>                     Suite 310<br>                     Greenwood Village, Colorado  80111<br>Telephone:       (303) 804-5355<br>Facsimile:        (303) 220-0153<br>Email:              mike@carringtonlaw.net<br>Atty.Reg.#:      1900 | |
| **REPLY TO COUNTERCLAIMS AS AGAINST LYNETTE EVANSON** | |

<div style="text-align: right; border: 1px solid black; padding: 20px; display: inline-block;">EXHIBIT 5</div>

COMES NOW, Lynette Evanson ("L. Evanson") , by and through her attorney, T. Michael Carrington, Law Offices of T. Michael Carrington, P.C., and files her **REPLY TO COUNTERCLAIMS** to whatever extent that she has been named in the within action, states as follows:

1.  L. Evanson denies the allegations set forth in paragraph 52, 53, and 54 of the Counterclaims.

2.  L. Evanson denies that she is a member of Advantedge and further denies all of the remaining allegations contained in paragraph 55.

3.  L. Evanson denies all other allegations set forth in Third Amended Answer and Counterclaims not specifically denied herein.

## AFFIRMATIVE DEFENSES

L. Evanson sets for the following affirmative defenses: as to the Counterclaims of the Defendant/Third Party Plaintiff :

1.     The Counterclaims fail to state a claim, in whole or in part, upon which relief may be granted.

2.     The doctrines of bad faith, waiver, set-off, estoppel, and unclean hands.

3.     Without admitting that defendant had damages, if defendant had any it was the result in whole or in part of its own actions and failure to mitigate such damages.

4.     Defendant/Third Party Plaintiff's Counterclaims are substantially groundless and frivolous, and they were introduced to vex L. Evanson entitling her to reasonable attorney's fees and costs, pursuant to applicable statutes, incurred and will be incurred in the defense of this action, CRS 13-17-101, et seq.

6.     Defendant /Third Party Plaintiff may not be the proper party in interest to bring one or more claims of the Counterclaims.

7.     Plaintiff fully performed under its contract with Defendant.

8.     Defendant/Third Party Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

9.  Defendant/Third Party Plaintiff's program founded in this case owned by a PEO, therefore may have been illegal.

10. Defendant /Third Party Plaintiff claims are barred or proportionately diminished in accordance with applicable law, including CRS 13-21-111 and 13-21-111.5, because any loss or damage sustained by Defendant/Third Party Plaintiff proximately caused in whole or in part, by the negligence or fault of the Defendant/Third Party Plaintiff.

11.  The claims are barred, in whole or in part, by the doctrines of unclean hands, laches, waiver, and/or accord and satisfaction.

12. The claims are barred, in whole or in part, by the doctrine of equitable estoppel.

13. The claims are barred, in whole or in part, by the doctrines of acquiescence and ratification.

14.  The claims are barred, in whole or in part, by the doctrine of set off.

15.  L. Evanson reserves her right to add additional or delete existing affirmative defenses as appropriate in light of the discovery to be conducted.


WHEREFORE Lynnette Evanson requests that judgment be entered in her favor and against Command Center, Inc., and that she be awarded her costs, attorney fees, expert witness fees and any other and further relief that appears just and proper with the Court.

Dated:  July 30, 2012.


Respectfully submitted,

s/ T. Michael Carrington

T. Michael  Carrington, #1900

**ATTORNEY FOR LYNETTE EVANSON**

## CERTIFICATE OF SERVICE

I certify that on July 30, 2012, I served a copy of the foregoing **REPLY TO COUNTERCLAIMS AS AGAINST LYNETTE EVANSON** to the following by:

            U.S. Mail, postage prepaid
To

AdvantEdge Insurance Group, LLC
5819 Jaguar Way
Littleton, CO 80124


            Electronically via Lexis/Nexis

Thomas J. Wolf
Mark E. Lacis
Ireland Stapleton Pryor & Pascoe, PC
1675 Broadway, Suite 2600
Denver, CO 80202

Heather S. Cleary
Ritsema & Lyon, P.C.
999 18th Street, Suite 3100
Denver, CO 80202

Michael J. Carrigan
Geraldine A. Brimmer
Robert M. Thomas
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, Colorado  80201-8749

T. Michael Carrington

## Sharon Fox

| | |
|---|---|
| **From:** | Support@ServicemembersCivilReliefAct.com |
| **Sent:** | Thursday, July 04, 2013 9:42 AM |
| **To:** | Sharon Fox |
| **Subject:** | Search Results - Servicemembers Civil Relief Act Centralized Verification Service |



| Name | Customer | Case | Tracking Number |
|---|---|---|---|
| EVANSON, TERRY | | Command Center | 201307044831 |

Based upon name and social security number you have furnished, as of 07/04/2013 ("Active Duty Status Date"), there is no information in the Department of Defense Manpower Data Center ("DMDC") that indicates that the individual is in Active Duty Status.

Upon searching the data banks of the Department of Defense Manpower Data Center, based upon the information that you provided, the above is the status of the individual ("Subject") on the Active Duty Status Date, as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for active duty.

Servicemembers Civil Relief Act Centralized Verification Service, a division of D.C. Registered Agent, Inc.

By: **Roy L. Kaufmann**
Roy L. Kaufmann, Authorized Signatory
Date: 07/04/2013
For support: Support@ServicemembersCivilReliefAct.com or Support@SCRA.com

This report is based upon information that you have provided. Providing an erroneous name, social security number, date of birth or other information may cause an erroneous report to be provided. If you obtain further information about the person you may resubmit your request and we will provide new status report for that query. This response reflects status as of Active Duty Status Date only. For historical information, please resubmit your inquiry with a different Active Duty Status Date or contact the individual Military Service SCRA points-of-contact:https://www.ServicemembersCivilReliefAct.com/live/link/points-of-contact.php . If you have evidence that the individual is/was on active duty as of the Active Duty Status Date and you fail to obtain this additional information, punitive provisions of the SCRA may be invoked against you. See 50 USC Section 521(c).

The Servicemembers Civil Relief Act Centralized Verification Service processes SCRA verifications through the Defense Manpower Data Center (DMDC) which is an organization of the United States Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military care and other eligibility systems.

This response reflects the following information: (1) the Active Duty status as of the Active Duty Status Date, (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date, and (3) Whether the individual or his/her unit received early notification to report for active duty on the Date of Interest. Records do not predate September 30, 1985.

**More information on Active Duty Status :**

Active duty status as reported in this report is defined in accordance with 10 USC Section 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC Section 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrators (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S.Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

**Coverage Coverage Under the SCRA is broader in Some Cases.**

Coverage under SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this report.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last

1

dates of active duty.

Those who could rely on this report are urged to seek qualified legal counsel to ensure that all rights guaranteed to Servicemembers under the SCRA are protected.

The information provided does not constitute a Consumer Report, as defined by the federal Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq. and may not be used to determine eligibility for credit, insurance, employment, or used for any other purpose governed by the FCRA.

Servicemembers Civil Relief Act Centralized Verification Service
For support: Support@ServicemembersCivilReliefAct.com or Support@SCRA.com

**Sharon Fox**

| | |
|---|---|
| **From:** | Support@ServicemembersCivilReliefAct.com |
| **Sent:** | Thursday, July 04, 2013 9:42 AM |
| **To:** | Sharon Fox |
| **Subject:** | Search Results - Servicemembers Civil Relief Act Centralized Verification Service |

 

| Name | Customer | Case | Tracking Number |
|---|---|---|---|
| EVANSON, LYNETTE | | | 201307044832 |

Based upon name and social security number you have furnished, as of 07/04/2013 ("Active Duty Status Date"), there is no information in the Department of Defense Manpower Data Center ("DMDC") that indicates that the individual is in Active Duty Status.

Upon searching the data banks of the Department of Defense Manpower Data Center, based upon the information that you provided, the above is the status of the individual ("Subject") on the Active Duty Status Date, as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for active duty.

Servicemembers Civil Relief Act Centralized Verification Service, a division of D.C. Registered Agent, Inc.

By: **Roy L. Kaufmann**
Roy L. Kaufmann, Authorized Signatory
Date: 07/04/2013
For support: Support@ServicemembersCivilReliefAct.com or Support@SCRA.com

This report is based upon information that you have provided. Providing an erroneous name, social security number, date of birth or other information may cause an erroneous report to be provided. If you obtain further information about the person you may resubmit your request and we will provide new status report for that query. This response reflects status as of Active Duty Status Date only. For historical information, please resubmit your inquiry with a different Active Duty Status Date or contact the individual Military Service SCRA points-of-contact:https://www.ServicemembersCivilReliefAct.com/live/link/points-of-contact.php . If you have evidence that the individual is/was on active duty as of the Active Duty Status Date and you fail to obtain this additional information, punitive provisions of the SCRA may be invoked against you. See 50 USC Section 521(c).

The Servicemembers Civil Relief Act Centralized Verification Service processes SCRA verifications through the Defense Manpower Data Center (DMDC) which is an organization of the United States Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military care and other eligibility systems.

This response reflects the following information: (1) The Active Duty status as of the Active Duty Status Date, (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date, and (3) Whether the individual or his/her unit received early notification to report for active duty on the Date of Interest. Records do not predate September 30, 1985.

**More information on Active Duty Status :**

Active duty status as reported in this report is defined in accordance with 10 USC Section 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC Section 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrators (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S.Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

**Coverage Coverage Under the SCRA is broader in Some Cases.**

Coverage under SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this report.

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of SCRA extend beyond the last dates of active duty.

Those who could rely on this report are urged to seek qualified legal counsel to ensure that all rights guaranteed to Servicemembers under the SCRA are protected.

The information provided does not constitute a Consumer Report, as defined by the federal Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq. and may not be used to determine eligibility for credit, insurance, employment, or used for any other purpose governed by the FCRA.

Servicemembers Civil Relief Act Centralized Verification Service
For support: Support@ServicemembersCivilReliefAct.com or Support@SCRA.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TERRY LEE EVANSON, | ) | Case No. 13-19032 MER |
| LYNETTE PEARCE EVANSON, | ) | Chapter 11 |
| Debtors. | ) | |
| _____ | ) | |
| COMMAND CENTER, INC., | ) | |
| Movant, | ) | |
| v. | ) | |
| TERRY LEE EVANSON, and | ) | |
| LYNETTE PEARCE EVANSON, | ) | |
| Respondents. | ) | |

## NOTICE OF MOTION FOR RELIEF FROM STAY
## AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. §362(d)

### OBJECTION DEADLINE: JULY 31, 2013.

YOU ARE HEREBY NOTIFIED that a Motion for Relief From Stay has been filed, a copy of which is attached hereto.

**A hearing on the motion has been set for Wednesday, August 7, 2013, at 9:30 a.m. in Courtroom C502,** at the Byron Rogers Federal Courthouse, 1929 Stout Street, Denver, Colorado 80294. The hearing will be conducted in accordance with the provisions of L.B.R. 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this Court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon the movant's attorney whose address is listed below.

If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits, and (2) attendance at the above-scheduled hearing in person or through counsel, if required.

IF YOU FAIL TO FILE AN OBJECTION, the scheduled hearing will be vacated and an order granting the relief requested may be granted without further notice to you.

DATED this 11th day of July, 2013.

Respectfully submitted,
BUECHLER LAW OFFICE, L.L.C.

/s/ Kenneth J. Buechler
_____
Kenneth J. Buechler, #30906
1621 18th Street, Suite 260
Denver, Colorado 80202
Tel: 720-381-0045/Fax: 720-381-0382
ken@kjblawoffice.com