UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-19032 MER |
| | ) | |
| Terry Lee Evanson | ) | Chapter 11 |
| SS# XXX-XX-9483 | ) | |
| | ) | |
| Lynette Pearce Evanson | ) | |
| SS# XXX-XX-5531 | ) | |
| | ) | |
| Debtors | ) | |

### OBJECTION TO MOTION FOR RELIEF FROM STAY

Terry Lee Evanson ("T. Evanson") and Lynette Pearce Evanson ("L. Evanson") (collectively, the "Evansons" or "Debtors"), through undersigned counsel, submit the following Objection to Motion for Relief from Stay, and state as follows:

### PRELIMINARY STATEMENT

Command Center, Inc. ("Command Center") intends to file an adversary proceeding to have its litigation claim against the Evansons declared non-dischargeable. All the issues underlying the litigation claim can and should be decided by this Court at the same time, and in the same proceeding, that it determines non-dischargeability. Nor would granting stay relief expedite the forthcoming adversary case. The claims asserted in the pending state court litigation, *AdvantEdge Insurance Group, LLC v. Command Center, Inc., et. al.,* Case No. 2010CV4135 in District Court, City and County of Denver, Colorado (the "Civil Action"), assert garden-variety fraud and breach of fiduciary duty, which is insufficient to support non-

1

dischargeability under § 523(a). Therefore, complex litigation, motions practice, discovery, and trial on the § 523(a) claims is inevitable.

Granting stay relief will compel the Evansons to spend considerable time and money litigating the Civil Action, which is seven months from trial, only to then have to litigate the § 523(a) claims in this Court. That time is better spent focusing on the administration of this bankruptcy case; their money should go to their creditors, not to their state court counsel.

The automatic stay is a fundamental debtor protection in the Bankruptcy Code that serves several important functions. Primary among these are to give the debtors protection from their creditors as they attempt to resolve their global obligations, provide for a centralized forum in which to resolve such obligations, and permit the orderly distribution of estate property in accordance with the Bankruptcy Code's distributional scheme. Granting Command Center, Inc.'s ("Command Center") Motion for Relief from Stay (the "Motion") would frustrate each of these purposes and the Motion must be denied.

Command Center fails to satisfy its statutory burden under section 362(d)(1) of Chapter 11 and well-settled precedent to establish that "cause" exists to lift the automatic stay. For the reasons set forth below, this Court should deny the Motion.

## BACKGROUND

1. The Civil Action was commenced by AdvantEdge Insurance Group, LLC ("AdvantEdge") against Command Center on or around May 19, 2010. *See* Motion, Complaint at Exhibit 1 thereto. AdvantEdge asserted five claims for relief against Command Center, including breach of implied contract, breach of contract, breach of implied covenant of good faith, unjust enrichment and declaratory judgment. *Id.*

2. In March 2012, Command Center filed a motion to join L. Evanson and T. Evanson as Third-Party Defendants, which motion was granted in May 2012. In its Third Amended Answer and Counterclaims, Command Center asserted five claims for relief against T. Evanson and others, including (1) professional malpractice/transactional malpractice; (2) breach of fiduciary duty; (3) civil theft; (4) fraud; and (5) negligence. With regard to L. Evanson, Command Center seeks recovery of any judgment against AdvantEdge from her, as the alleged sole member manager of AdvantEdge, under a theory of piercing the corporate veil. *See* Motion, Exhibit 3 thereto at ¶ 55.

3. With regard to the claims against T. Evanson, Command Center alleges, *inter alia*, that:

- He committed professional malpractice by not acting as a reasonable insurance agent would have acted, including by failing to properly solicit bids for Command Center's policies.
- He breached his fiduciary duties to Command Center with respect to the placement and handling of its insurance policies.
- He engaged in fraud by falsely representing the amount of an insurance premium.

*See* Motion, Exhibit 3 thereto at ¶¶ 18, 22, and 31, and 40.

4. On January 2, 2013, AdvantEdge filed its Voluntary Petition under Chapter 7, Case No. 13-10006-MER ("AdvantEdge Bankruptcy").

5. On April 2, 2013, Command Center commenced an Adversary Proceeding and filed its Objection to Discharge and Complaint Under 523(a)(2), (4) & (6) of the Bankruptcy Code to Determine the Dischargeability of Debt ("Adversary Complaint"), a copy of which is attached hereto as **Exhibit A**. Although the Adversary Complaint is against AdvantEdge,

3

Command Center asserted several allegations relating to T. Evanson that were raised in the Civil Action. (Adversary Complaint at ¶¶ 9, 12, 23, 31, 35 & 36).

6. On May 2, 2013, AdvantEdge filed a Motion to Dismiss Adversary Proceeding. The Court granted the Motion on July 17, 2013 holding that no discharge will be entered in the AdvantEdge Bankruptcy because AdvantEdge is not an individual and 11 U.S.C. 727(a)(1) is not applicable to AdvantEdge.

7. The Debtors filed for Chapter 11 relief on May 28, 2013.

8. On July 26, 2013, Command Center filed a Motion for Relief from Stay in the AdvantEdge Bankruptcy. The Motion for Relief in the AdvantEdge Bankruptcy is essentially the same as the Motion in the within case.

## ARGUMENT

### A. Legal Standard

"Unquestionably, this is exactly the type of action to which the stay of § 362(a)(1) is directed. Congress meant to give the debtor some breathing room from pending litigation and to free the debtor of the burden of defending numerous lawsuits in various different forums." *In re Fiedler*, 34 B.R. 602, 604 (Bankr. D. Colo. 1983). The automatic stay imposed by section 362(a) of the Bankruptcy Code prevents "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." 11 U.S.C. § 362(a)(1). Section 362(d)(1) provides in pertinent part that [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . .for cause[.]"

The "for cause" standard is strictly enforced, and with good reason. The automatic stay is designed to give a debtor a "breathing spell" upon the commencement of a chapter 11 case and to shield the debtor from a multitude of litigation in a variety of forums at a time when the debtor is rightly focused on marshaling his affairs. *In re Fiedler*, 34 B.R. 602, 604 Bankr. D. Colo. 1983); *In re Busch*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003). As such, "even slight interference" with the administration of the bankruptcy estate may be enough to preclude relief from the automatic stay. *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984). Because "cause" is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis. *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987). The automatic stay is intended "to prevent a chaotic an uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Curtis*, 40 B.R. at 798. The stay insures the debtor's affairs will be "centralized, initially, in a single forum in order to prevent conflicting judgments from different courts in order to harmonize all of the creditors' interests with one another." *Id.*

Importantly, the party moving for relief from stay has the initial burden of coming forward with *prima facie* evidence showing that "cause" exists for granting such relief. *In re Curtis*, 40 B.R. at 798. In its Motion, Command Center sates that the Court should consider the following seven factors as relevant to determine whether to grant relief from stay in this case: factors 1, 2, 4, 7, 10, 11 and 12.

**B.** **Command Center has Failed to Establish Cause to Lift the Automatic Stay**

Perhaps strategically in light of the pending Motion, Command Center has delayed filing an adversary against the Evansons. However, Command Center acknowledges candidly that one

purpose of the relief requested is to assist this Court in determining "issues concerning the non-dischargeability of the Debtors' debts to Command Center." (Mot. At ¶ 12(g)). At issue in this forthcoming adversary proceeding will be the alleged (a) breach of fiduciary duty by T. Evanson and (b) fraud and/or misrepresentation relating to the failure to shop policies and retaining excess premiums. These are claims and issues that may be fully and fairly litigated in the Bankruptcy Court. There can be no reason for permitting the litigation to proceed in state court when (a) this Court cannot give preclusive effect to any determination of common law fraud or garden variety breach of fiduciary duty, *In re Curtis*, 40 B.R. at 804, and (b) the only possible result of relief from stay would be duplicative litigation before this Court. *Id.*

1. **Factor #1: Resolution of the Issues**

In its Motion, Command Center asserts that granting relief from stay "will allow Command Center to obtain complete resolution on the issues in the Civil Action, including the liquidation of its claims against the Debtors." *See* Motion at ¶ 12(a). Courts have held that this factor does not favor either party when resolution is just as likely in front of the Bankruptcy Court. *In re Dreier*, 438 B.R. 449, 456 (Bankr. S.D.N.Y. 2010) (finding that the first factor did not favor claimant when both the Bankruptcy Court and the other Court were "equally well suited" to resolve the claim).

Regardless, lifting the stay will not result in complete resolution of the claims or issues raised in the Civil Action. At the very least, non-dischargeability is reserved to the exclusive jurisdiction of this Court. *In re Curtis*, 40 B.R. at 804.

More so, however, if stay relief is granted and Command Center returns to this Court with a judgment from the Civil Action, collateral estoppel will not apply. Under Colorado law,

collateral estoppel applies only if "[t]he issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999); *In re Curtis*, 40 B.R. at 804 ("A state court judgment would be subject to collateral attack by the bankruptcy court and would not determine the issue of nondischargeability"). If the state court in the Civil Action finds fraud on the part of T. Evanson, the bankruptcy court must then apply the standards of 11 U.S.C. § 523 to decide the dischargeability issues. *Id.* ("It is clear that in a nondischargeability action the bankruptcy court may look behind the state court judgment and examine the facts in light of the Bankruptcy Code.").

Thus, an order granting relief from stay to permit Command Center to liquidate its claims in the Civil Action "will result in at best only a partial resolution of the issues and at worst will further complicate issues and result in needless relitigation." *In re Cloud Nine, Ltd.*, 3 B.R. 202, 204 (Bankr. D.N.M. 1980).

### 2. Factor #2: Lack of Connection or Interference with the Bankruptcy Case

Command Center's cursory and half-hearted argument that the "Civil Action will have limited interference with the proceedings in this Bankruptcy Case," (Motion at ¶ 12(b)), falls well short of satisfying Command Center's burden to demonstrate "good cause." "Congress contemplated relief from the stay may be appropriate to permit state court adjudication of such matters as divorce, child custody and probate proceedings where such matters bear no relation to the bankruptcy case." *In re Curtis*, 40 B.R. at 804-805. "However, unlike those issues, the *allowance of claims and determination of non-dischargeability are fundamental bankruptcy issues.*" (emphasis supplied). *Id.*; *see also In re Davis*, 2005 Bankr. LEXIS 1165 (Bankr. D. Kan.

7

June 17, 2005) ("The state court litigation is intimately connected with the bankruptcy case. Determination of the amount of the claim held by Black against the Debtors is a fundamental bankruptcy issue.")

Litigating the Civil Action will require the time and limited resources of Debtors to adequately defend. The early stages of a bankruptcy case, in particular, require a Chapter 11 debtor to "devote full time and attention" to reviewing financials, dealing with creditors, concentrating on reorganization and paying claims. *In re Leonard*, 51 B.R. 53, 54 (Bankr. D.C. 1985) (finding that there is no need for a claim to be liquidated in the early stage of a Chapter 11 proceeding, especially since the estate is short on cash). Consequently, Debtors would be severely prejudiced by having to defend a lawsuit seeking significant damages during the early stages of their Chapter 11 case.

### 3. Factor #4 Specialized Tribunal

The state court is not a specialized tribunal  Command Center's claims against T. Evanson include professional malpractice, breach of fiduciary duty, civil theft, fraud, and negligence. The only claim against L. Evanson is based upon a theory of piercing the corporate veil asserted against AdvantEdge. These matters do not involve unsettled questions of state law, nor do they require adjudication before a specialized tribunal. *In re Curtis*, 40 B.R. at 805. Especially given that these claims are intertwined with forthcoming claims under the Code, Command Center's claims can, and should, be heard in this Court.

### 4. Factor #7 Prejudice to the Interests of Creditors

Command Center asserts that the Civil Action will not prejudice any other creditors "because Command Center's claim in this bankruptcy case will be an unsecured claim." *See*

Motion at ¶ 12(d). However, stay relief will force the Debtors to pay money they can ill-afford to spend to defend themselves in the Civil Action, which, of course, will drain the cash assets of the estate. *See Partee v. White (In re White)*, 2004 Bankr. LEXIS 478, *14 (Bankr. D. Colo. Mar. 12, 2004) ("The reasons for the automatic stay are twofold. It allows the debtors an important breathing spell, but it also protects the creditors by insuring that assets of the estate are not dissipated"). Furthermore, relief from the stay will cause undue delay in this bankruptcy, also prejudicing the rights of the Debtors' creditors.

5. **Factor # 11 The Civil Action is Not Ready for Trial**

Command Center asserts that the trial "can proceed as scheduled." Motion at ¶ 12(f). However, the Civil Action is not primed and ready for trial. Trial is not scheduled to commence until the end of March 2014, approximately seven months from now. As set forth in the Motion, there still remains substantial discovery to be conducted, including the depositions of Command Center and L. Evanson, as well as other witnesses. Although trial has been scheduled, dispositive motions, motions *in limine* and other pretrial motions have not been filed, much less ruled upon, witness and exhibit lists have not been exchanged, and jury instructions have not been proposed. The parties could get the forthcoming adversary proceeding to trial as soon as, or even before, trial in the Civil Action.

6. **Factor #11: Interests of Judicial Economy**

Command Center argues that a relief from stay will "serve the interests of judicial economy as the State Court in the Civil Action stands ready to hear and determine the issues." Motion at ¶ 12(e). As stated above, absent a finding of "cause," all litigation over claims against the Debtors should be centralized in the Debtors' bankruptcy court. It would be more efficient

9

for the parties to litigate Command Center's claims in front of the bankruptcy court. Otherwise, the parties will be required to expend resources litigating these issues in front of two tribunals – once in front of the state court and later in front of this Court with respect to the inevitable adversary proceeding brought by Command Center, and also with respect to the claims resolution process.

Furthermore, should the Motion be granted, Debtors will be forced to expend significant resources participating in and defending against discovery sought by Command Center in both the Civil Action and the bankruptcy. As set forth in the Motion, the deposition of L. Evanson was canceled due to the filing of the Petition. Command Center filed a Motion for Examination of Terry Lee Evanson and Lynette Pearson Evanson [Doc. # 45] pursuant to Fed. R. Bankr. P 2004, seeking to depose L. Evanson and T. Evanson. Should the stay be lifted, L. Evanson will be required to sit for her deposition in, not only the Civil Action, but in the within bankruptcy. Indeed, Debtors will already be expending significant resources relating to Command Center's Motion for Examination, wherein Command Center seeks discovery relating to the same issues raised in the Civil Action. Such a waste of judicial and estate resources is not in the best interest of any party.

7. **Factor #12: Balance of Harms**

   a. **Balance of harms favors Debtors**

If the automatic stay were lifted, the Debtors' ability to administer their estate and would be severely impacted. First, at this early state in the Chapter 11, the estate has neither the time nor the resources to devote towards defending the Civil Action without harming the Debtors and the estate. Second, lifting the stay would require the Debtors to bear the financial burdens of

litigation. The Debtors filed bankruptcy for a reason. There is a good chance that if stay relief is granted, their remaining resources will prove insufficient to fund the defense through the end of trial. It would be inequitable for Command Center to obtain stay relief simply so that they can force the Debtors back into cost-prohibitive litigation. On the other side of the balance, denial of stay relief will entitle Command Center to pursue its claims in this Court, in addition to a claim for non-dischargeability. Command Center can take advantage of all the discovery conducted in the Civil Action in this Court, as well as seek additional discovery. Indeed, Command Center is already seeking discovery relating to its claims in the Civil Action by virtue of its Motion for Examination. Granting stay relief will only serve to hurt the Debtors, with no obvious benefit to Command Center.

### b. Command Center's claim may be determined by the Bankruptcy Court

As set forth in *In re Curtis*:

> The ultimate question in this case is the allowance of movant's claims against the debtor's estate and the dischargeability thereof. A determination of liability in the state court action would be followed by the filing of a proof of claim in this court and continuation of the nondischargeability suit. . . .[T]he Court believes that the most expeditious course would be to adjudicate movants' claim here and, if necessary, estimate their claim under the procedure afforded by Section 502(c).

*Id.* at 806.

Section 502(c) of the Bankruptcy Code was enacted by Congress specifically to provide bankruptcy courts a means to efficiently administer a debtor's chapter 11 case and allow confirmation of a plan of reorganization in circumstances where the resolution of a contingent or unliquidated claim in a non-bankruptcy forum would result in undue delay. It has long been recognized that one of the essential, "core" functions of bankruptcy is the allowance or

11

disallowance of claims against the Debtor's estate, without regard to the source of the claim. *In re UAL Corp.*, 310 B.R. 373, 377 (Bankr. N.D. Ill. 2004); *Addison v. Langston (Matter of Brints Cotton Marketing, Inc.),* 737 F.2d 1338, 1340 (5th Cir. 1984) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.C.C.A.N 5787, 5808. "Congress intended that the bankruptcy courts continue to use this section to facilitate the speedy and expeditious resolution of claims in bankruptcy courts." *Interco Inc. v. ILGWU Nat'l Retirement Fund (Matter of Interco Inc.)*, 137 B.R. 993, 997 n2 (Bankr. E.D. Mo. 1992). The purpose of expanding the definition of "claim" and providing for the estimation of contingent or unliquidated claims where failure to do so would unduly delay the administration of a debtor's case is to "permit a complete settlement of the affairs of the bankruptcy debtor, and a complete discharge and a fresh start." H.R. Rep. No. 95-595, at 180 (1978), 1978 U.S.C.C.A.N. 5963, 6141.

In estimating a claim, the bankruptcy court should use whatever method is best suited to the particular circumstances. *In re Aspen Limousine Servs.,* 193 B.R. 325, 337 (D. Colo. 1996). Bankruptcy courts invariably adopt procedures that are quicker and more streamlined than a full trial. *In re DeGeorge Financial Corp.,* 2002 U.S. Dist. LEXIS 17621 (D. Conn. July 15, 2002) ("The methods used by courts [to estimate claims] have run the gamut from summary trials...to full-blown evidentiary hearings...to a mere review of pleadings, briefs, and a one-day hearing involving oral argument of counsel.") (internal citations omitted).

In the present case, there is no question (despite Command Center's protestations to the contrary) that the Civil Action will substantially delay the administration of the Debtors' case. Command Center's claims are nothing more than an unliquidated and unsecured claim that should be a part of the claims presentment process in the bankruptcy Court. To require the

Debtor to participate and defend in a litigation forum outside the bankruptcy Court would conflict with the purposes of the Bankruptcy Code.

## CONCLUSION

For the foregoing reasons, Debtors respectfully request this court enter an order denying Command Center's Motion for Relief from Stay, and for such further relief the Court deems appropriate.

Respectfully submitted this 31st day of July, 2013.

                                                ALLEN & VELLONE, P.C.

                                                */s/Patrick D. Vellone*
                                                Patrick D. Vellone, # 15284
                                                Kevin D. Allen, #8878
                                                Tatiana G. Popacondria, # 42261
                                                1600 Stout Street, Suite 1100
                                                Denver, CO 80202
                                                Telephone: (303) 534-4499

                                                **ATTORNEYS FOR THE DEBTORS-IN-POSSESSION**

## CERTIFICATE OF SERVICE

      I hereby certify that on July 31, 2013, I electronically filed with the Clerk of the Court using CM/ECF system and served by prepaid first class mail a copy of the foregoing on the following parties listed below:

Clarissa M. Raney
555 17th St., Ste. 3200
Denver, CO 80202-3921

William C. Brittan
270 St. Paul St., Ste. 200
Denver, CO 80206-5133

U.S. Trustee
999 18th St., Ste. 1551
Denver, CO 80202-2415

Alan K. Motes
United States Trustee Program
999 18th St., Ste. 1551
Denver, CO 80202-2415

Jeffrey A. Weinman
730 17th St., Ste. 240
Denver, CO 80202-3506

Douglas County Treasurer
Attn: Stephanie Cook
100 Third Street
Castle Rock, CO 80104

Heather S. Cleary, Esq.
999 18th Street, Suite 3100
Denver, CO 80202

Kenneth J. Buechler
Buechler Law Office, LLC
1621 18th Street, Suite 260
Denver, Colorado 80202

      */s/ Juanita E. Sena*_____
      Juanita E. Sena