## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-19032 MER |
| | ) | |
| Terry Lee Evanson | ) | Chapter 11 |
| SS# XXX-XX-9483 | ) | |
| | ) | |
| Lynette Pearce Evanson | ) | |
| SS# XXX-XX-5531 | ) | |
| | ) | |
| Debtors | ) | |

## MOTION FOR EXAMINATION OF COMMAND CENTER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Debtors, Terry Lee Evanson ("Mr. Evanson") and Lynette Pearce Evanson ("Mrs. Evanson") (collectively, the "Evansons" or "Debtors"), by and through their counsel, Allen & Vellone, P.C., and pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and requests that the Court enter an Order authorizing the examination of Command Center, Inc., and as grounds therefore states as follows:

## BACKGROUND

1.      Debtors filed their voluntary Chapter 11 bankruptcy petition on May 28, 2013 (the "Petition").  Since the date of the filing of their bankruptcy petition, the Debtors have remained in possession of their assets and have managed their financial affairs as Debtors-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.      In or around 2003, Glenn Welstad formed Command Staffing, LLC, the predecessor of Command Center, Inc.  Command Staffing provided temporary workers for manual day labor to the construction industry, other light industry, and small businesses in several states across the country.  In 2003 Command Staffing also started selling franchises across the country.  Ron Junck was the company's General Counsel.  In or around late 2005 and early 2006, Command Staffing entered into an asset purchase agreement with a small publicly traded company.  The name of the company was changed to Command Center, Inc. ("Command Center").

3.      Mr. Evanson's background is in risk management and consulting in the fields of commercial insurance and workers compensation insurance.  In 2004, Mr. Evanson worked as an insurance agent for Lockton Companies, an insurance brokerage company.  While at Lockton,

1

Mr. Evanson was approached by Mr. Welstad and Mr. Junck for the purpose of handling all of Command Staffing insurance needs.  Mr. Evanson, who had known Mr. Welstad and Mr. Junck for many years, informed them that Lockton was unable to handle that size of an account and referred them to Keith Anderson, a self-employed wholesale insurance broker.  Command Staffing retained the services of Mr. Anderson.  Mr. Anderson became the insurance broker and risk consultant for some of Command Staffing's franchise companies.  In 2005, Mr. Anderson was retained by Command Center as its Broker and Risk Management Consultant and was made part of the Risk Management Team with Command Center.  At that time, Mr. Anderson began operating AdvantEdge Insurance Group, Inc. ("AdvantEdge"), a company that was previously owned by Mr. and Mrs. Evanson.

4.      In 2006, Mr. Anderson put together a master policy for Command Center for the company's workers compensation, general liability and umbrella insurance policies.  The policies were placed with AIG through WorldWide Specialty Group.  Command Center expressly authorized Mr. Anderson to act as part of Command Center's risk management group. In 2007, Mr. Anderson once again secured the renewal of insurance policies through AIG for Command Center for workers compensation, general liability and umbrella policies.  The policies were in effect through 2008.  In 2008, Mr. Anderson provided renewal quotes for these policies to Command Center, who then gave him written direction to proceed with the renewal of these policies for another year.  After several negotiations between Mr. Anderson, AIG and Command Center on the renewal of the workers compensation policy, the total premium that Command Center agreed to pay was $1,455,452 for the fixed costs and a claims collateral account amount of $4,500,000 for a total of $5,955,452.  Command Center subsequently requested the amount be paid in eight installments and also requested a month's time to come up the initial deposit amount of $800,000 that Command Center requested from AIG.  However, Command Center did not pay the initial deposit and changed brokers from Mr. Anderson to another insurance broker, Assurance Agency.

5.      On or around May 19, 2010, AdvantEdge Insurance Group, LLC commenced a civil action against Command Center, Inc. in District Court, City and County of Denver, Colorado, case No. 2010CV4135 (the "Civil Action").  AdvantEdge asserted five claims for relief against Command Center, including breach of implied contract, breach of contract, breach of implied covenant of good faith, unjust enrichment and declaratory judgment. Command Center filed its Answer and affirmative defenses on or around July 26, 2010.  Thereafter, Command Center filed three Amended Answers and Counterclaims, which also included third-party claims against Moreton Insurance of Colorado, LLC d/b/a Moreton & Company ("Moreton").  The Amended Answers were filed on July 26, 2010, December 16, 2010 and June 9, 2011.  In March 2012, Command Center joined the Debtors as additional third party defendants to the Command Center Cross Claims.

6.      In its Third Amended Answer and Counterclaims, Command Center asserted five claims for relief against AdvantEdge, Moreton, T. Evanson and Keith Anderson, including (1) professional malpractice/transactional malpractice; (2) breach of fiduciary duty; (3) civil theft; (4) fraud; and (5) negligence.  With regard to L. Evanson, Command Center seeks recovery of

any judgment against AdvantEdge from her, as the alleged sole member manager of AdvantEdge, under a theory of piercing the corporate veil.

7.      Debtors filed their Petition on May 28.[1]  As part of the Petition, Debtors listed the Civil Action.  In addition, the Debtors identified debts owed to Command Center in the amount of $1,500,000 as contingent, unliquidated and disputed. On July 11, 2013, Command Center filed its Motion for Relief from Stay [Doc. # 38].  On July 22, 2013, Command Center filed its Motion for Examination of Terry Lee Evanson and Lynette Pearce Evanson ("Motion for Examination") [Doc. # 45].  Pursuant to both the Motion for Relief and Motion for Examination, Command Center alleges that it learned of a "several year scheme of overcharging Command Center on the premiums for insurance policies brokered through Mr. Evanson, Keith Anderson and their affiliates."  In addition, Command Center alleges that it "also learned that excess premiums were diverted by Mr. Evanson, Mr. Anderson and others to affiliates." As a result of its alleged investigation, Command Center asserts that it has suffered damages "in excess of $832,063.24" and that Debtors allegedly "received the benefit of over $59,081.00 of Command Center's over payment of premiums to AdvantEdge Insurance Group, LLC."

8.      In its Motion for Examination, Command Center desires to examine the Debtors relating to, *inter alia*, "undisclosed receipt of Command Center's funds."  To that end, Command Center also seeks discovery of 37 categories of documents relating to several entities with which Command Center believes Debtors are affiliated.

## ARGUMENT

9.      A debtor in possession "is a fiduciary, responsible for managing the affairs of the debtor for the benefit of the parties with an interest in the debtor's estate." *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988) (citation omitted).  This duty includes investigating and determining the value of potential estate causes of action and, if warranted, commencing litigation or entering into settlements with regard to such causes of action, for the purpose of maximizing the value of the estate. *See, e.g, Lange v. Schropp (In re Brook Valley IV, Joint Venture)*, 347 B.R. 662, 673 (B.A.P. 8th Cir. 2006); *Smart World Techs, LLC v. June Online Servs., Inc.*, 423 F.3d 166, 175 (2d Cir. 2005) ("As fiduciary, the debtor bears the burden of 'maximizing the value of the estate,' including the value of any legal claims.") (citation omitted).

10.      Rule 2004 of the Federal Rules of Bankruptcy Procedure provides for examination of any person regarding the acts and conduct of the Debtor, property of the Debtor, the liabilities and financial condition of the Debtor, and matters which may affect the administration of the Debtor's estate. The scope of a Rule 2004 examination is "unfettered and broad," as the wording of the rule indicates. *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000).  The scope of a Rule 2004 examination is far broader than the scope of discovery under

---

[1] On January 2, 2013, AdvantEdge filed its Voluntary Petition under Chapter 7, Case No. 13-10006-MER ("AdvantEdge Bankruptcy").  AdvantEdge listed the Civil Action in its Schedule E.  Command Center is listed as an unsecured creditor with a claim in the amount of $1,500,000.  Other parties involved in the Civil Action are also listed as unsecured creditors, but the amount of their claims are unknown.

Rule 26 of the Federal Rules of Civil Procedure. *In re Lang*, 107 B.R. 130, 132 (Bankr. N.D. Ohio 1989). The well-settled scope of discovery conducted under Rule 2004 is so fundamental to the bankruptcy process and permissibly broad that courts have gone so far as to use with approval words and phrases such as "fishing expedition," "exploratory and groping," and "inquisition." *In re Strecker,* 251 B.R. at 882; *In re Drexel Burnham Lambert Group*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984). Moreover, "[b]ecause the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs*, 156 B.R. 414, 432 (S.D.N.Y. 1993); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (Bankruptcy Rule 2004 examination "may extend to creditors and third parties who have had dealings with the debtor.")

11.     Command Center's damage claims against the Debtors in the Civil Action are premised upon two theories: (i) its alleged ability to redesign its insurance coverage with a new program at a lower cost; and (ii) overcharging of fees and costs by AdvantEdge. The Debtors desire to examine the individual or individuals at Command Center pursuant to Rule 2004 with the greatest knowledge of the transactions between the Debtors and Command Center, and Command Center and those persons familiar with the cost of their new programs and any difficulties in implementing such programs. The Debtors also desire to examine Command Center as to the transactions between Command Center and Mr. Anderson, AdvantEdge, Moreton, AMS Staff Leasing II, and Assurance Agency. Such discovery would inure to the benefit of the Debtors' estate and Debtors must obtain information identified in **Exhibit A** hereto.

12.     The Debtor requests that the Court enter an Order authorizing the examination of Command Center pursuant to Rule 2004, and requiring Command Center to produce the documents described on Exhibit A attached hereto at the time of said examination.

Respectfully submitted this 21st day of August, 2013.

ALLEN & VELLONE, P.C.

*/s/Patrick D. Vellone*
Patrick D. Vellone, # 15284
Kevin D. Allen, #8878
Jennifer E. Schlatter, #30626
Tatiana G. Popacondria, # 42261
1600 Stout Street, Suite 1100
Denver, CO 80202
Telephone: (303) 534-4499

**ATTORNEYS FOR THE DEBTORS-IN-POSSESSION**

4

## CERTIFICATE OF SERVICE

I hereby certify that on 21st day of August, 2013, I electronically filed with the Clerk of the Court using CM/ECF system and served by prepaid first class mail a copy of the foregoing on the following parties listed below:

Jeffrey A. Weinman
730 17th St., Ste. 240
Denver, CO 80202-3506

Clarissa M. Raney
555 17th St., Ste. 3200
Denver, CO 80202-3921

Douglas County Treasurer
Attn:  Stephanie Cook
100 Third Street

William C. Brittan
270 St. Paul St., Ste. 200
Denver, CO 80206-5133

Castle Rock, CO 80104

U.S. Trustee
999 18th St., Ste. 1551
Denver, CO 80202-2415

Heather S. Cleary, Esq.
999 18th Street, Suite 3100
Denver, CO 80202

Alan K. Motes
United States Trustee Program
999 18th St., Ste. 1551
Denver, CO 80202-2415

Kenneth J. Buechler
Buechler Law Office, LLC
1621 18th Street, Suite 260
Denver, Colorado 80202

*/s/ Juanita E. Sena*_____
Juanita E. Sena

5

## EXHIBIT A

### DEFINITIONS AND INSTRUCTIONS

A.      "Document," in either the singular or plural form, shall be construed in its broadest sense and shall include, but is not limited to, all written, printed, typed, recorded, graphic, stenographic, computer generated, computer stored, and electronically stored matter of every kind and description. The term "document" includes, but is not limited to, the following: correspondence, memoranda, drafts, computerized records, notes, jottings, books, records, reports, surveys, studies, analyses, things, videotapes, recordings, computer disks, electronic mail, email, transcriptions of verbal conversations or statements however made, business forms, labels, papers and films filed with courts or other governmental bodies, notices, messages, calendar and diary entries, appointment books, lab notebooks, minutes and other formal or informal memoranda of meetings, and copies of documents that are not identical duplicates of originals.

B.      "Relating to" includes pertaining to, referring to or having as its subject matter, directly or indirectly, expressly or impliedly, the subject matter of the specific Request.

C.      These requests shall apply to all documents in your possession, custody, or control at the present time or coming into your possession, custody, or control prior to the date of the production. If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody, or control, you shall so state and shall identify such documents or things, and the person who has possession, custody, or control of the documents or things.

D.      If no documents are responsive to a particular request, you are to state that no responsive documents exist.

E.      For any responsive documents or tangible things that have been lost, destroyed, withheld from production, or redacted, based on any ground, you shall provide a written statement setting forth:

      a.   the identity of the document;
      b.   the nature of the document (e.g, letter, memorandum, chart);
      c.   the identity of the person(s) who received copies of the document;
      d.   the date of the document;
      e.   a brief description of the subject matter of the document; and
      f.   the circumstances of the loss or destruction of the document and any fact, statute, rule or decision upon which you rely in withholding the document.

F.      If you decline to produce any document or any part of a document based on a claim of privilege or any other claim, describe the nature and basis of your claim and the information withheld in a manner sufficient to:

    a.   disclose the facts upon which you rely in asserting your claim;

    b.   permit the grounds and reasons for withholding the information to be identified unambiguously; and

    c.   permit the information withheld to be identified unambiguously.

    G.    All documents requested are to be produced in the same file or other organizational environment in which they are maintained. For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket, or grouping, in the same order or manner of arrangement as the original. Alternatively, as to each document and thing produced in response hereto, you shall identify the request for production and where applicable, the interrogatory number, in response to which the document or thing is being produced.

    H.    "Debtors" shall mean Terry Evanson and Lynette Evanson.

    I.    "Command Center" shall mean Command Center, Inc. f/k/a Command Staffing, LLC.

    J.    "AdvantEdge" shall mean AdvantEdge Insurance Group, LLC.

    K.    "Assurance" shall mean Assurance Agency.

    L.    "Moreton" shall mean Moreton Insurance of Colorado, LLC d/b/a Moreton & Company.

    M.    "WorldWide" shall mean WorldWide Specialty Group.

    N.    "AIG" shall mean American International Group, Inc.

    O.    The "AIG Policies" shall refer to the works compensation, general liability and umbrella policies placed by Keith Anderson with AIG, through World Wide Specialty Group.

    P.    "AMS" shall mean AMS Staff Leasing II.

    Q.    "Tri-State" shall mean S. TSE PEO.

    R.    "Dallas National" shall mean Dallas National Insurance

    S.    The "Staff Leasing Agreement" shall mean the Agreement dated May 13, 2008 between AMS and Command Center.

    T.    "PEO" shall collectively mean Professional Employer Organizations or staff leasing organizations.

**DOCUMENTS TO BE PRODUCED**

1.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Command Center and AdvantEdge from November 2005 through June 2008 regarding the AIG Policies.

2.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Command Center and Terry Evanson from November 2005 through June 2008 regarding the AIG Policies.

3.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Command Center and Lynette Evanson from November 2005 through June 2008 regarding the AIG Policies.

4.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Command Center and Moreton from November 2005 through June 2008 regarding the AIG Policies.

5.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Command Center and Keith Anderson from November 2005 through June 2008 regarding the AIG Policies.

6.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Ron Junck and Keith Anderson referring or relating to PEOs.

7.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Command Center and Assurance Agency, and its representatives and employees, relating to securing replacement insurance policies for Command Center.

8.      Copies of all documents referring or relating to any comparative analysis of insurance products and insurance premiums performed by Assurance Agency on behalf of Command Center relating to the securing of replacement insurance policies for Command Center.

9.      Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Command Center and AMS relating to the Staff Leasing Agreement.

10.     Copies of Minutes of Meetings, including resolutions, of the Board of Directors of Command Center referring or relating to terminating the AIG Policies.

11.     Copies of Minutes of Meetings, including resolutions, of the Board of Directors of Command Center referring or relating to Moreton.

12.     Copies of Minutes of Meetings, including resolutions, of the Board of Directors of Command Center referring or relating to AdvantEdge.

13.     Copies of Minutes of Meetings, including resolutions, of the Board of Directors of Command Center referring or relating to the Staff Leasing Agreement.

14.     Copies of documents referring or relating to notifications submitted to state insurance commissioners and/or secretaries of state in those states in which Command Center operates relating to the Staff Leasing Agreement.

15.     Copies of all documents referring or relating to notifications issued by Command Center to its clients regarding obtaining a replacement workers compensation policy through AMS.

16.     Copies of all documents referring or relating to any due diligence and/or investigation conducted by, or on behalf of, Command Center relating to the insurance coverage provided pursuant to the Staff Leasing Agreement.

17.     Copies of all documents referring or relating to any due diligence and/or investigation conducted by, or on behalf of, Command Center relating to state laws and/or regulations in those states in which Command Center operates concerning the notice requirements of the co-employment relationship entered into between AMS and Command Center pursuant to the Staff Leasing Agreement.

18.     Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Ron Junck and the Board of Directors of Command Center referring or relating to AMS and/or the Staff Leasing Agreement.

19.     Copies of all correspondence, including but not limited to, letters, emails, facsimiles, and memoranda, between Glen Welstad and the Board of Directors of Command Center referring or relating to AMS and/or the Staff Leasing Agreement.

20.     Copies of all documents referring or relating to any analysis conducted by, or on behalf of, Command Center of the difference in costs associated with the AIG Policies and any replacement policies obtained through AMS.

21.     Copies of all documents referring or relating to any analysis conducted by, or on behalf of, Command Center of the difference in costs associated with any replacement policies obtained through Dallas National.

22.     Copies of all documents referring or relating to any analysis conducted by, or on behalf of, Command Center of the difference in costs associated with any replacement policies obtained through Tri-State.

23.     Copies of all notices to shareholders of Command Center referring or relating to the Staff Leasing Agreement.

24.     Copies of all notices to the Securities Exchange Commission referring or relating to the Staff leasing Agreement.

4

25.     Copies of each certificate of insurance demonstrating workers compensation coverage that was issued by AMS from May 2008 to the present.

26.     Copies of each certificate of insurance demonstrating workers compensation coverage that was issued by Dallas National from 2010 to the present.

27.     Copies of each certificate of insurance demonstrating workers compensation coverage that was issued by Tri-State from 2008 to the present.

28.     Copies of workers compensation policies utilized by Command Center from May 2008 to the present.

29.     Copies of all documents referring or relating to all fees paid to AMS.

30.     Copies of all documents referring or relating to all fees paid to Assurance.

31.     Copies of all documents referring or relating to all fees paid to Dallas National.

32.     Copies of all documents referring or relating to all fees paid to Tri-State.

33.     Copies of all documents referring or relating to all fees paid to any insurance carrier from which Command Center obtained workers compensation insurance from 2008 until the present.

34.     Copies of all documents referring or relating to the investigation conducted by Command Center in support of its contention that Command Center has suffered damages "in excess of $832,063.24."

35.     Copies of all documents in support of Command Center's allegations that Debtors engaged in a scheme of overcharging Command Center on the premiums for insurance policies.