

**usbank**   Advantedge
Microfilme 7-26-01   #45

# U.S. BANK SIMPLY BUSINESS PREMIUM LINE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $100,000.00 | 07-13-2001 | 08-01-2002 | NEW | USBP | | 7521387456 | BJK26 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** ADVANTEDGE BUSINESS GROUP, L.L.C.   (TIN: 84-1487968)
2305 EAST ARAPAHOE ROAD, SUITE 150
LITTLETON, CO  80122

**Lender:** U.S. BANK NATIONAL ASSOCIATION
DOWNTOWN CHAMPA OFFICE
918 17TH STREET
DENVER, CO  80202

---

U.S. BANK, SIMPLY BUSINESS and UBANK are registered service marks of U.S. Bancorp.

The general terms and conditions applicable to Borrower's U.S. Bank Simply Business Premium Line are described in the U.S. Bank Simply Business Premium Line Terms and Conditions ("Terms and Conditions") which are incorporated herein and made a part hereof and which have been provided to Borrower. This Agreement includes additional terms which are applicable to Borrower's Loans with Lender. Except as otherwise defined herein, capitalized terms shall have the meanings assigned to such terms in the Terms and Conditions.

1. **CREDIT LIMIT.** The maximum principal amount outstanding at any one time under the U.S. Bank Simply Business Premium Line, including the Variable Rate Advances and all Fixed Rate Advances, shall not exceed an aggregate amount equal to $100,000.00 (as such amount may be changed from time to time, the "Credit Limit").

2. **PROMISE TO PAY.** Borrower promises to pay to the order of Lender, in accordance with the terms of this Agreement and the Terms and Conditions, a principal amount equal to the Credit Limit or so much thereof as may be outstanding, together with interest as set forth in this Agreement. If Borrower is granted an increase in the Credit Limit at any time, Borrower also promises to pay that amount to the order of Lender.

3. **EXPIRATION DATE.** All principal of all Variable Rate Advances, together with all accrued unpaid interest, shall be due and payable in full on the earlier of DEMAND, or August 1, 2002 (the "Expiration Date."). Provided no Event of Default or event which with the passage of time would become an Event of Default has occurred and is continuing, the Expiration Date, as such may have been extended from time to time as provided herein, shall be automatically extended for a period of one year, unless Lender provides Borrower with 60 days prior written notice of Lender's intention not to extend or unless either party provides the other with written notice of cancellation pursuant to Section 7 hereof. Any extension of the Expiration Date will not prejudice Lender's right to choose not to extend the Expiration Date subsequently. If an Event of Default or event which with the passage of time would become an Event of Default has occurred and is continuing, the Expiration Date shall not be deemed to be extended regardless of whether Lender notifies Borrower of Lender's intention not to extend. Notwithstanding anything apparently to the contrary herein, in the event Lender notifies Borrower of its intention not to extend the Expiration Date, (a) Borrower shall not, upon receipt of such notice, have the right to request new Advances, including but not limited to converting all or a portion of a Variable Rate Advance to a Fixed Rate Advance or all or a portion of one Fixed Rate Advance to another Fixed Rate Advance, as more particularly described in the Terms and Conditions, and (b) Borrower shall (i) repay all Variable Rate Advances in full, together with interest thereon on or before the Expiration Date, (ii) repay all Fixed Rate Advances in accordance with the amortization schedule then in effect for the Fixed Rate Advances outstanding as of the Expiration Date and in accordance with the other terms of this Agreement and the Terms and Conditions, and (iii) shall otherwise perform all terms and conditions of this Agreement, the Terms and Conditions and the other Loan Documents. Any such notice of Lender's intention not to extend shall be deemed a demand by Lender for repayment of the Variable Rate Advances, together with interest thereon.

4. **VARIABLE RATE ADVANCES.**

   a. **Variable Interest Rate.** Interest shall accrue on the Variable Rate Advances at a variable per annum interest rate (the "Variable Interest Rate") equal to (i) The Wall Street Journal Prime Rate plus 2.0000% if payments on the Variable Rate Advances are being paid by automatic debit from Borrower's business account with Lender or another U.S. Bank affiliated with Lender; or (ii) The Wall Street Journal Prime Rate plus 2.7500% if payments on the Variable Rate Advances are not being paid by automatic debit from Borrower's business account with Lender or another U.S. Bank affiliated with Lender.

   b. **Payment Schedule.** Interest on all Variable Rate Advances shall be paid on the 1ST day of SEPTEMBER and on the same day of each month thereafter and on any day when payment of the entire outstanding balance of the Variable Rate Advances becomes due.

5. **FIXED RATE ADVANCES.**

   a. **Fixed Interest Rate.** Interest shall accrue on each Fixed Rate Advance at a rate equal to the applicable Fixed Interest Rate. The Fixed Interest Rate for any Fixed Rate Advance is a per annum interest rate equal to The Wall Street Journal Prime Rate, as in effect on the date such Fixed Rate Advance is made, plus (i) 2.5000% if payments on the Fixed Rate Advances are being paid by automatic debit from Borrower's business account with Lender or another U.S. Bank affiliated with Lender and (ii) 3.2500% if payments on the Fixed Rate Advances are not being paid by automatic debit from Borrower's business account with Lender or another U.S. Bank affiliated with Lender. Although different Fixed Rate Advances may bear different interest rates, unless otherwise provided herein, the interest rate for any individual Fixed Rate Advance will not change during the term of such Fixed Rate Advance.

   b. **Payment Schedule.** Each month, on the payment due date established by Borrower, beginning with the month following the month in which any Fixed Rate Advance is made, Borrower shall repay each Fixed Rate Advance in approximately equal installments of principal and interest, each in an amount sufficient to fully amortize the balance of principal and interest of the Fixed Rate Advance over the amortization period selected by Borrower as provided by Section 5(d) hereof; provided, however, that the then outstanding balance of principal and interest of each Fixed Rate Advance shall be due and payable in full at the end of the amortization period for such Fixed Rate Advance.

   c. **Additional Interest Payments.** In addition to the payments set forth in Section 5b, upon the date of conversion of any Fixed Rate Advance to another Fixed Rate Advance, Borrower shall pay to Lender all interest accrued to the date of conversion.

   d. **Amortization.** Borrower may select an amortization period of from 12 to 60 months; provided, however, that once an amortization period has been selected for any Fixed Rate Advance, such amortization period cannot be changed.

6. **LOAN FEES.** Borrower shall pay such fees as Lender establishes from time to time, including without limitation the following:

   a. **Extension Fee.** If the Expiration Date is extended, and each time it is extended, a non-refundable fee in an amount equal to $300.00.

   b. **Other Fees and Expenses.** Any fees or expenses described in the Disbursement Request and Authorization or any other Loan Document.

7. **RIGHT TO CANCEL; REDUCTION OF CREDIT LIMIT.** Notwithstanding anything apparently to the contrary herein, either Borrower or Lender may cancel the U.S. Bank Simply Business Premium Line for any reason at any time by written notice to the other, as described in the Terms and Conditions. Upon any such cancellation, (a) no further Advances shall be made, including but not limited to converting all or a portion of a Variable Rate Advance to a Fixed Rate Advance or all or a portion of one Fixed Rate Advance to another Fixed Rate Advance, as more particularly

UBank Overdraft Protection. _____ is authorized to make automatic transfers of fu___ ___rom Borrower's U.S. Bank Simply Business Premium Line to Account No. 1-036-5610-6335 at U.S. Bank National Association.

9. **TERMS AND CONDITIONS.** Borrower acknowledges receipt of a copy of the Terms and Conditions and agrees to be bound by all provisions thereof. Lender may change this Agreement or the Terms and Conditions by giving notice to Borrower as set forth in the Terms and Conditions and Borrower shall be bound by all such changes. All provisions of the Terms and Conditions and any amendments and replacements are incorporated herein, and Borrower's execution of this Agreement shall be deemed an execution of the Terms and Conditions and any amendments or replacements thereto or to this Agreement.

10. **GOVERNING LAW.** This Agreement has been delivered to Lender and accepted by Lender in the State of Colorado. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of DENVER County, State of Colorado. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Colorado (excluding the law of conflicts).

11. **SECURITY.** All present and future amounts owing to Lender, including without limitation amounts owing under this Agreement and the other Loan Documents shall be secured by a security interest in all of Borrower's now owned and hereafter acquired inventory, equipment, accounts, chattel paper, documents, instruments and general intangibles and all products and proceeds thereof ("Collateral"). The Collateral shall at all times have a fair market value in an amount acceptable to Lender. Borrower shall from time to time take such actions and execute and deliver to Lender such security agreements, financing statements and other documents as Lender may require to grant, preserve, perfect, protect and continue the validity and priority of Lender's security interests in the Collateral (collectively, "Security Documents"). Lender's security interests shall be of a priority acceptable to Lender.

12. **GENERAL PROVISIONS.** Lender may delay or forego enforcing any of its rights or remedies under this Agreement or the Terms and Conditions without losing them. Borrower and any person who signs, guarantees, or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Agreement or the Terms and Conditions, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor. accommodation maker or endorser, shall be released from liability. All such parties agree that, to the extent allowed by law, Lender may modify, renew, extend (repeatedly and for any length of time) this Loan, or release any party or guarantor or Collateral; or impair, fail to realize upon or perfect Lender's security interest in the Collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. This Agreement and the Terms and Conditions shall bind and benefit the parties and their respective heirs, successors and assigns.

13. **SHARING OF INFORMATION.** Lender offers its customers the full resources of its banking, investment and insurance capabilities. Lender shares customer information within its organization (including Lender's affiliates and parent company) so that customer accounts are properly serviced and to better meet its customers' needs. If Borrower is an individual and prefers that Lender not provide this information (excluding information about its experiences with Borrower) to other legal entities that are part of Lender's corporate family, such individual Borrower may write Lender at: U.S. Bank Customer Information (CIS), Mailcode SPPN 0803, 336 North Robert Street, St. Paul, MN 55101. Lender shares its customers' concerns about the privacy of personal information and strives to maintain confidentiality of such information.

14. **WAIVER OF JURY TRIAL.** LENDER AND UNDERSIGNED HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER LENDER OR UNDERSIGNED AGAINST THE OTHER.

15. **UBANK OVERDRAFT PROTECTION.** Borrower has requested and been granted UBank Overdraft Protection from Lender ("UBank Overdraft Protection"). So long as this Note is in force, Borrower authorizes Lender to draw funds hereunder and transfer such funds automatically to Borrower's [commercial or consumer] checking account number 1-036-5610-6335 maintained with Lender ("Checking Account"). Lender agrees to make an automatic transfer of funds to the Checking Account in increments of $500.00, rounded to the next increment of $500.00, to pay checks that would otherwise overdraw the Checking Account by [if commercial account, $1.01 or more, or if consumer account, one cent or more], up to Borrower's available credit limit. If the amount of available funds hereunder is less than $500.00, such available funds will be advanced. There is no charge for using UBank Overdraft Protection. However, if Borrower's credit limit would be exceeded by any transfer of funds, if this Note has matured, or this Note or any related loan document is otherwise in default, and no other UBank Overdraft Protection privileges are available to Borrower, any check presented for payment from Checking Account will, at the sole option of Lender, either be paid, thus overdrawing Checking Account, or dishonored, and Borrower shall repay all such overdrawn amounts and pay all overdraft, non-sufficient funds and other applicable Checking Account charges. If Borrower consists of more than one person or entity, each such person and entity shall be jointly and severally liable for all obligations of Borrower hereunder. Regardless of whether Borrower is in default under this Note or any other agreement with Lender, and notwithstanding anything apparently to the contrary in this Note or any related loan document, Lender shall have the right to decline to make any UBank Overdraft Protection transfer or to cancel UBank Overdraft Protection privileges and any time, with or without cause, and with or without notice to Borrower. Any advance is subject to the terms of this Note and the related loan documents, the U.S. Bank Customer Agreement and any amendments or modifications thereto. Lender may change the terms of UBank Overdraft Protection at any time by giving Borrower written notice prior to the effective date of change. This agreement for UBank Overdraft Protection is not in addition to and shall be deemed to supersede and replace any previous agreements between Borrower and Lender with respect to any line of credit, credit card or other credit overdraft protection related to the Checking Account, and Borrower and Lender agree and consent to the termination of any other such credit overdraft protection agreement as of the date hereof. UBANK is a registered service mark of U.S. Bancorp..

**Entire Agreement.** This Agreement, the Terms and Conditions, and other Loan Documents executed in connection with this Agreement constitute the entire and final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

Borrower acknowledges receipt of a copy of this Agreement.

This Agreement is dated as of July 13, 2001.

BORROWER:
ADVANTEDGE BUSINESS GROUP, L.L.C.

By: _____Lynette Evanson_____
LYNETTE EVANSON, Member

LENDER:
U.S. BANK NATIONAL ASSOCIATION

By: _____
Authorized Officer

Pay to the order of NTL CAPITAL LLC WITHOUT REPRESENTATION, WARRANTY OR RECOURSE except for any representation, warranty or recourse explicitly stated in Section 5 of that certain Loan Purchase Agreement dated May 30, 2014 between NTL CAPITAL LLC and the undersigned.

June 9, 2014       U.S. Bank National Association

By _____Kent M. Wheelock_____
Kent M. Wheelock
Its Senior Vice President



# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $100,000.00 | 07-13-2001 | 08-01-2002 | NEW | USBP | | 7521387456 | BJK26 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** ADVANTEDGE BUSINESS GROUP, L.L.C. (TIN: 84-1487968)
2305 EAST ARAPAHOE ROAD, SUITE 150
LITTLETON, CO 80122

**Lender:** U.S. BANK NATIONAL ASSOCIATION
DOWNTOWN CHAMPA OFFICE
918 17TH STREET
DENVER, CO 80202

**LOAN TYPE.** This is a Variable Rate (2.000% over highest United States Prime Rate as published in The Wall Street Journal "money rates" table. If a change occurs in the published rate, a corresponding change in the interest rate applicable to this Note shall become effective as of the effective date of such change. If the Wall Street Journal Prime Rate ceases to be available, Lender may choose a comparable successor index), Revolving Line of Credit Loan to a Limited Liability Company for $100,000.00 due on August 1, 2002.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: SBCC COLORADO - PREMIUM LINE.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $100,000.00 as follows:

| | |
|---|---|
| Undisbursed Funds: | $100,000.00 |
| Note Principal: | $100,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: $300.00  Opening Fee (as described in the U.S. Bank Simply Business Premium Line Agreement) | $300.00 |
| Other Charges Paid in Cash: $300.00  Extension Fee (as described in the U.S. Bank Simply Business Premium Line Agreement) | $300.00 |
| Total Charges Paid in Cash: | $600.00 |

**FEE AND DISBURSEMENT AUTHORIZATION.** U.S. Bank National Association is hereby authorized, without liability on Bank's part, to disburse the proceeds of, and collect fees (fees will be collected by: [X] debiting account #1-036-5610-6335 or [ ] check to be attached by customer) on the loan evidenced by the note or extension/modification agreement of the Borrower in the amount of $100,000.00 dated JULY 13, 2001, as described above.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JULY 13, 2001.

**BORROWER:**

ADVANTEDGE BUSINESS GROUP, L.L.C.

By: *[signature]*
LYNETTE EVANSON, Member

Variable Rate. Line of Credit.   LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29a (C) Concentrex 2001 All rights reserved. [CO-I20 E3.29 F3.29 31403.LN C23.OVL]

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $100,000.00 | 07-13-2001 | 08-01-2002 | NEW | USBP | | 7521387456 | BJK26 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** ADVANTEDGE BUSINESS GROUP, L.L.C.   (TIN: 84-1487968)
2305 EAST ARAPAHOE ROAD, SUITE 150
LITTLETON, CO  80122

**Lender:** U.S. BANK NATIONAL ASSOCIATION
DOWNTOWN CHAMPA OFFICE
918 17TH STREET
DENVER, CO  80202

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Variable Rate (2.000% over highest United States Prime Rate as published in The Wall Street Journal "money rates" table. If a change occurs in the published rate, a corresponding change in the interest rate applicable to this Note shall become effective as of the effective date of such change. If the Wall Street Journal Prime Rate ceases to be available, Lender may choose a comparable successor index), Nondisclosable Revolving Line of Credit Loan to a Limited Liability Company for $100,000.00 due on August 1, 2002.

**Parties.** The term "Parties" means U.S. BANK NATIONAL ASSOCIATION and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

   Borrower:   ADVANTEDGE BUSINESS GROUP, L.L.C.
   Guarantor:  LYNETTE EVANSON

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

**NECESSARY FORMS**

Limited Liability Co Borrowing Resolution
Security Agreement
Exhibit(s)
Notice of Final Agreement
* COMMERCIAL SECURITY AGREEMENT ADDENDUM

Commercial Guaranty
UCC - 1
Disbursement Request and Authorization
U.S. Bank Simply Bus. Premium Line Agr.
* NATIONAL UCC FINANCING STATEMENT

**OPTIONAL FORMS**

Verification from Corporate Commissioner

---

Each Party who signs below, other than U.S. BANK NATIONAL ASSOCIATION, acknowledges, represents, and warrants to U.S. BANK NATIONAL ASSOCIATION that it has received, read and understood this Notice of Final Agreement. This Notice is dated July 13, 2001.

**BORROWER:**

ADVANTEDGE BUSINESS GROUP, L.L.C.
By: _/s/ Lynette Evanson_____
LYNETTE EVANSON, Member

**GUARANTOR:**

X _/s/ Lynette Evanson_____
LYNETTE EVANSON

**LENDER:**

U.S. BANK NATIONAL ASSOCIATION
By: _____
Authorized Officer

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29a (C) Concentrex 2001 All rights reserved. [CO-I21 E3.29 F3.29 31403.LN C23.OVL]

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | District of Colorado | PROOF OF CLAIM |
|---|---|---|

Name of Debtor: Lynette Evanson

Case Number: 13-19032 MER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): US Bank

Name and address where notices should be sent:
Jeanne Meehan/SBLC/PD-OR-PL2
555 SW OAK STE 220
Portland, OR 97204

Telephone number: (503) 275-3306

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 100,247.79

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Money Loaned
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 5531
   3a. Debtor may have scheduled account as: US Bank Line
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe:

   Value of Property: $_____  Annual Interest Rate ____%

   Amount of arrearage and other charges as of time case filed included in secured claim,
   if any: $_____   Basis for perfection: _____

   Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

   **Amount entitled to priority:** $_____

   *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date: 10/19/2013

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Jeanne M Meehan Spec Loan Rel Mgr   /s/ Jeanne M Meehan  10-19-13

FOR COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.